# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

★ SEP 0 6 2025 ★

BROOKLYN OFFICE

Ehab Hassan,

Plaintiff,

v.

Spring Oaks Capital, LLC,

Spring Oaks Capital SPV, LLC,

Defendants.

Case No. 1:25-cv-04850 (NRM)(CHK)

# EXHIBIT INDEX

1. **Exhibit AA** – Business Loan Agreement Summary (Annotated Promissory Note & Business Purpose Pages)

2. **Exhibit AB** – LendingPoint Email - Notice Of Debt Sale

3. **Exhibit AG** – Annotated Cover Sheets (LendingPoint → Spring Oaks LLC → Spring Oaks SPV)

4. **Exhibit M** – Loan Agreement Chain – eBay Merchant Targeting to Business Loan Execution

5. **Exhibit N** – Business Bank Account Activity (Commercial Funding & Repayment)

6. **Exhibit Q** – Annotated Assignment Agreement (Spring Oaks LLC → Spring Oaks SPV)

7. **Exhibit R** – Ownership & Reporting Authority Discrepancies

8. **Exhibit T** – Chronological Record of Dispute Activity Regarding Spring Oaks Capital, LLC & SPV

9. **Exhibit U** – Legal Violations Matrix (FCRA, Reg. Z, NY GBL § 349, NYC Admin Code § 20-490)

10. **Exhibit V** – Damages Summary Matrix

# EXHIBIT AA

## Loan Agreement Between First National Bank and Plaintiff (Business Use) – Summary

This exhibit isolates and highlights key instances in the loan documents where the borrower and lender affirm that the loan:

- Is for **business purposes only,**

- Must **not be used for personal, family, or household purposes,** and

- Therefore, is **disqualified from consumer credit reporting** under the Fair Credit Reporting Act (FCRA).

**Included Documents (4 pages – not including this cover sheet):**

- **Page 2 – Consent to Electronic Communication**

    o Highlights "BUSINESS LOAN AGREEMENT" as the signed contract.

    o Reinforces commercial classification.

- **Page 3 – Promissory Note Cover Page**

    o Clause: *"You agree that you will not use the loan proceeds for personal, family, household, or consumer purposes."*

    o Title: "Promissory Note and Disclosures."

- **Page 4 – Promise to Pay Clause Page**

    o Borrower-certified declaration: *"You promise and represent that you will use the proceeds of the loan for business purposes and not for personal, family, or household purposes..."*

- **Page 5 – Promissory Note – Assignment**

    o Declares the agreement as **commercial paper.**

1

Source: Defendants' CFPB Response (produced June 29, 2025, unannotated).
Note: This annotated summary is provided for clarity and emphasis only;
the original CFPB response remains available in the record.

---

**CONSENT TO ELECTRONIC COMMUNICATIONS:**

Your Name: Ehab Hassan                          Your Email Address: ehabhassan@yagoat.com

You must consent to receive communications and transact business with LendingPoint LLC and its assignees, and LendingPoint's lending partners (including but not limited to First Electronic Bank and FinWise Bank) and their assignees (each a "Lender" and collectively "We" or "Us") through electronic communications in order for us to process your offer request ("Offer Request"). The following terms and conditions govern electronic communications in connection with your Offer Request, Business Loan Agreement (if approved) and any communications regarding your account with a Lender (the "Consent").

By affixing your electronic signature to this Consent, you are confirming that you have agreed to the terms and conditions of the Consent and that you are able to download or print a copy of this Consent for your records.

You agree that:

1. Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, the Business Loan Agreement, this Consent, the Credit Cost disclosures set forth in the Business Loan Agreement, Privacy Notice, change-in-terms notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, transaction information and any other communications related to your business relationship with a Lender (collectively, "Communications"), may be sent to you electronically by email, through the Lender's website, or through other electronic means.

2. We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so by opting out of receipt of electronic communications.

3. You may obtain a copy of any Communication by contacting us at customerservice@lendingpoint.com or by calling us at 888-969-0959. You may withdraw your consent to ongoing electronic communications in the same manner and ask that Communications be sent to you in paper or non-electronic form. We will not charge you a fee for such paper copies.

4. You agree to provide us with your current email address for notices, which unless notified otherwise we assume is the email address indicated in your Offer Request. If your email address, telephone number(s), or residence address changes, you must send us a notice of the new address/telephone number(s) by sending us an email at customerservice@lendingpoint.com, or using the LendingPoint customer portal, at least five (5) days before the change to be effective with us.

5. In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet through HS encryption capabilities. Netscape 4.7+ and above, Microsoft Internet Explorer 5.01+ and above, and other web browsers support this feature. You will also need a printer connected to your computer to print disclosures/notices. We do not provide ISP services. You must have your own Internet Service Provider.

6. You agree that you are able to view and/or electronically store the information presented in this Consent. You also agree to print and retain a copy of this Consent for your records.

7. This Consent applies to all interactions and transactions with us and includes communications through any computer or mobile device, including phones, smart-phones, and/or tablets. This Consent also applies to receipt in electronic form of all disclosures, information, agreements and other documents.

8. You acknowledge and agree to affix your electronic signature on this Consent and the BUSINESS LOAN AGREEMENT. By affixing your electronic signature to this Consent and the BUSINESS LOAN AGREEMENT, you are agreeing to all of its terms and conditions. You agree that your electronic signature shall have the same force and effect and shall bind you to this Consent and BUSINESS LOAN AGREEMENT in the same manner and to the same extent as a physical signature would do, in accordance with the Electronic Signature in Global and National Commerce Act (ESIGN) to the extent applicable.

9. You are free to withdraw your Consent at any time and at no charge. If at any time you wish to withdraw your Consent, you can notify us by phone at 888-969-0959, or you can send us your written request by email to: customerservice@lendingpoint.com or by mail to LendingPoint LLC d/b/a LendingPoint, Attn: Customer Service, 1201 Roberts Blvd., Suite 200, Kennesaw, GA 30144 with the details of such request. If you decide to withdraw your Consent, the legal effectiveness, validity, and enforceability of prior electronic disclosures or Communications will not be affected.

When I click the "SIGN BUSINESS LOAN AGREEMENT & CONSENT TO ELECTRONIC COMMUNICATIONS" button, my electronic signature is authenticated and affixed hereto.

*Ehab Hassan*

This page confirms that the agreement being signed is a Business Loan Agreement, not a consumer credit contract. The signatory affirms consent to all terms of the Business Loan Agreement, which by definition falls outside the scope of FCRA consumer protections.

Borrower: Ehab Hassan          01/28/2023

FEB/Non-Consumer/Upfront Fee/02-01-2021

Page 1 of 13

2

This Promissory Note explicitly excludes the use of funds for any personal, family, household, or consumer purpose.

This confirms that the loan is commercial in nature and therefore not reportable under the FCRA's consumer credit framework.

FCRA violations under:
-- 1681e(b) (accuracy),
-- 1681s-2(b) (reinvestigation),
-- 1681i(a)(1)(A) (dispute handling).

# Promissory Note and Disclosures

Furnishing this account to consumer reporting agencies constitutes a misclassification and FCRA violation

This document describes the terms and conditions of your First Electronic Bank loan. You agree that you will not use the loan proceeds for personal, family, household, or consumer purposes. The Credit Cost Disclosures below are part of this Promissory Note.

This Promissory Note contains an arbitration agreement that provides that you and we agree to submit to binding arbitration of any dispute under this Promissory Note or any dealings in connection with this promissory note and not through litigation in any court. See Section 16 below.

| PROMISSORY NOTE NUMBER: APP-0033206944 | AGREEMENT DATE: 01/28/2023 |
|---|---|
| BORROWER: Ehab Hassan<br>7902 Bay Parkway<br>Brooklyn, NY<br>11214<br>Email address: ehabhassan@yagoat.com | LENDER: FIRST ELECTRONIC BANK<br>2150 S 1300 E, SUITE 400<br>SALT LAKE CITY, UT 84106 |

## CREDIT COST DISCLOSURES

| Disbursed Loan Amount | One Fixed Finance Charge | Amount Due |
|---|---|---|
| The principal loan amount disbursed to you or on your behalf. | The dollar amount the credit will cost you. | The Disbursed Loan Amount plus the One Fixed Finance Charge equal the total amount due by you under this Agreement (subject to any additional fees or amounts that may come due and owing under other provisions of this Agreement). |
| $16,092.17 | $1,367.83 | $17,460.00 |

YOUR PAYMENT SCHEDULE RELATED TO THE AMOUNT DUE WILL BE:

| NUMBER OF PAYMENTS: | AMOUNT OF PAYMENTS: | WHEN PAYMENTS ARE DUE: |
|---|---|---|
| 12 | $1,455.00 | MONTHLY, Beginning 30 days from date of funding. |

Security: You X are _ are not giving a security interest in the electronic payment authorization.

Prepayment: If you pay off all or part of the loan early, you will not be entitled to a rebate of part of the One Fixed Finance Charge.

See your contract terms for any additional information about nonpayment, default, any required repayment in full before the scheduled due date, no prepayment rebates or penalties.


FEE/Non-Consumer/Upfront Fee/02-01-2021

3

This language confirms the servicing role was designated to LendingPoint from the outset.

| ITEMIZATION OF ESTIMATED AMOUNT FINANCED | |
|---|---|
| 1. Amount given directly to you | $16,092.17 |
| 2. Amount paid on your account | $0.00 |
| 3. Amount paid to others on your behalf | $0.00 |
| 4. Amount Financed | $16,092.17 |
| One Fixed Finance Charge (Prepaid Finance Charge) | $1,367.83 |

## PROMISSORY NOTE
### ("AGREEMENT")

1. **TERMS.** The parties (each, a "Party" and collectively, "Parties") to this Agreement are Borrower designated above ("Borrower," "you," or "your") and First Electronic Bank, our agents, successors, and Assignees, as the term is defined in Section 8 ("Bank," "Lender," "we," "our," or "us"). LendingPoint LLC ("LendingPoint") will service this Agreement.

2. **SUBMITTING THIS AGREEMENT.** In order to submit this Agreement to us, you must electronically sign it below. Your signed Agreement is subject to our approval, and submitting this Agreement does not entitle you to a loan. After we receive your signed Agreement, we will verify your information and may require additional information from you in order to approve the Agreement. If we are unable to verify your information, the information varies from that previously provided to us, and/or if you fail to provide any information required by us, we may decline your loan request. If we decline your loan request, we will notify you, we will not fund the loan, and you will not incur the One Fixed Finance Charge or any fees. If we approve your loan request, we will use commercially reasonable efforts to fund the loan. The time of funding may vary or be delayed due to various reasons, including but not limited to, delays as a result of weekends, bank holidays, untimely receipt of verification details, processing errors, "acts of God", and/or "acts of terror" and you agree to waive and release any claims or damages related to any delay in the time of funding.

3. **PROMISE TO PAY.** For value received, you promise to pay to us, including any assignee of this Agreement, the Amount Due reflected in the Credit Cost Disclosures above (which consists of the Disbursed Loan Amount plus the One Fixed Finance Charge), and charges as set forth below, by making installment payments as described in the Payment Schedule set forth in the Credit Cost Disclosures above. You may authorize automatic electronic payments via ACH or debit card using the Authorization for Automatic Payments below, or you may pay by authorizing a one-time electronic payment for the first scheduled payment and delivering checks for each additional payment on or before each scheduled due date. (California and Wisconsin residents have the option of making all scheduled payments by check.) You promise and represent that you will use the proceeds of the loan for business purposes and not for personal, family, or household purposes or any illegal purposes.

4. **PAYMENTS.** Payments are due in the amounts and on the dates set forth in the Payment Schedule above in the Credit Cost Disclosures. We may provide you a revised payment schedule before your first payment is due, depending on the date loan proceeds are disbursed. We estimated the payment schedule above based on available information. If we provide you a revised payment schedule, then you agree to pay in accordance with the revised payment schedule. We will not change the payment frequency unless requested by you or on your behalf (subject to our sole discretion as to whether to approve such request),

but your payment due dates may change. If a scheduled payment falls on a date we are not open for business, then we will credit a payment received and honored on the next business day as if it were received on the scheduled payment date. . Unless your loan is earlier due and payable as provided in this Agreement, you agree to pay in full any unpaid amounts payable under this Agreement on the Maturity Date shown in the Payment Schedule in the Credit Cost Disclosures above.

    a. **Electronic Check Conversion.** If you present a check for payment, you authorize us: (1) to use the information from your check to make an electronic funds transfer from your account; or (2) to process the transaction as a check. Please note, if we elect to use your check for an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your check is received and you may not receive the check back from your financial institution.

    b. **Prepayment.** You may prepay your loan at any time without penalty. Prepayments will not change your scheduled payment(s), but your final payment amount may be smaller than the payment amount shown above or you may reduce the total number of scheduled payments required to repay your loan or you may payoff your loan before your last payment date shown above.

    c. **One Fixed Finance Charge.** The One Fixed Finance Charge is a prepaid finance charge that is fully earned at the time the Disbursed Loan Amount is disbursed.

5. **NOTICES AND CONTACT INFORMATION.** If you consented to receipt through electronic mail to the email address set forth by you above ("Designated Email") of all notices, records, disclosures and other information related to this Agreement ("Electronic Records") as further provided in the E-Sign Disclosure and Consent to Electronic Receipt of Loan Disclosures provided to you when you or someone on your behalf completed your application or as part of signing this Agreement, we will send Electronic Records; however, we may in our discretion deliver any such Electronic Records in paper form to the last postal service mailing address of record we have for you. You must advise us immediately of any changes or updates to, inactivity of or operational problems with your Designated Email. You agree that the federal Electronic Signatures in Global and National Commerce Act applies to this Agreement and agree to our ability to conduct business with you by electronic means. All provisions of any Electronic Records are binding on you just as if they were delivered in paper to your address shown above.

You agree that we may contact you at any phone number you provide. When you give us your mobile phone number, we have your consent to contact you at that number about your Agreement. Your consent allows us to use text messaging, automatic dialing technology and artificial or prerecorded voice messages for informational and loan service calls. It may include contact from companies working on our behalf to service your Agreement. Message and data rates may apply. You may contact us at any time to change these consents.

FEB/Non-Consumer/Upfront Fee/02-01-2021

4

No consumer loan rights or protections apply under FCRA – not a personal credit agreement.

Classified as "commercial paper" under UCC – confirms business-purpose loan.

6. **DEFAULT.** Except as limited by applicable law, you will be in default under this Agreement if:

    a. you fail to make any scheduled payment or other sums owing under this Agreement on the date it is due;

    b. you fail to timely perform any of your obligations under this Agreement or, if applicable, you fail to cure such failure to perform to our reasonable satisfaction within the period provided in the notice from us of your failure to perform;

    c. any representation made by you or your behalf in, or in connection with, your loan application or this Agreement is false, inaccurate, or omitting information in any material respect when made;

    d. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filing; or

    e. you die.

7. **REMEDIES.** Our remedies if you default on this Agreement include but are not limited to the following (to the fullest extent permitted by law):

    a. _General._ In the event that you are in default under this Agreement, we may:

        1. declare your loan immediately due and payable in full to us regardless of whether or not we take any action;

        2. provide a report to the credit bureaus regarding your payment history and status of default (which may negatively affect your credit record);

        3. pursue any other remedies we may have at law or in equity, including without limitation declaring the outstanding balance of the Amount Due, and other fees and charges immediately due and payable in full.

    b. _Loan Acceleration._ If your loan is immediately due and payable, you must promptly pay in full the unpaid Amount Due, and any other amounts and fees payable under this Agreement.

    c. _Cost Reimbursement._ You agree to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement, including reasonable attorneys' fees and the costs of collection after default.

    d. _Interest After Maturity._ Interest at our election may accrue after the Maturity Date disclosed in the Payment Schedule in the Credit Cost Disclosures above on any unpaid amounts owing by you to us at the lesser of eighteen percent (18%) per annum simple interest or the highest interest rate allowed by applicable law. You agree to pay to us any such interest that accrues in accordance with these provisions and understand and agree that your obligations under this Agreement will not be satisfied until any interest accruing after the Maturity Date is paid in full.

Our rights under this Agreement are cumulative and we may exercise any, all or a combination of these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default

until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. Our failure to take any action or delay taking any action related to your default, or similar or unrelated default, does not waive, or imply a waiver of, any of our rights under this Agreement.

8. **ASSIGNMENT.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent. This Agreement may be assigned or sold by Bank to another party (the "Assignee"). Assignee shall be entitled to all of the Bank's rights under this Agreement. For purposes of the Uniform Commercial Code and applicable law, this Agreement shall be deemed "commercial paper." Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

9. **CREDIT REPORTS AND MONITORING.** We may obtain credit reports on you on an ongoing basis until this Agreement is paid in full and you irrevocably consent to such. We may report information concerning your performance under this Agreement to credit reporting agencies and you irrevocably consent to such. Late payments, missed payments or other defaults on this Agreement may be reflected in your credit report. If you believe we inaccurately reported information about you or this Agreement to a credit reporting agency, call 844-379-0055 or send an email to our servicer at customerservice@lendingpoint.com. You will need to provide your loan account number along with copy of your credit bureau report reflecting the information that you believe is inaccurate.

10. **TERMINATION.** The terms of this Agreement that would, by their express nature, survive the termination of this Agreement will survive and be enforceable under this Agreement.

11. **NO REPRESENTATIONS OR WARRANTIES.** No representations or warranties by Lender or LendingPoint are expressed or implied and no statements made by Lender or LendingPoint that are not contained as part of this Agreement are valid or binding.

12. **LIMITATION OF LIABILITY.** OUR OR LENDINGPOINT'S LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL WE OR LENDINGPOINT BE LIABLE TO YOU FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

13. **MISCELLANEOUS.** (a) This Agreement and its accompanying documents represent the entire Agreement between the parties as to the matters discussed herein and there are no other prior or contemporaneous oral or written contracts or representations by Lender or LendingPoint on which you are relying. (b) Any modifications to this Agreement must be in writing issued by us to be effective. Any reproduction by us of your credit application, this Agreement or its accompanying documents by reliable means (scanned image or other widely accepted copy technology) shall be considered the same as the original. (c) A finding by a court of competent jurisdiction that one or more provisions of this Agreement are void or contrary to any applicable state or federal law will not invalidate other parts of the Agreement. To the extent any interest or fee is determined to exceed that allowed by applicable law, you agree that any such rate or fee may be reduced to an amount allowable by applicable law.

This designation invalidates personal credit reporting. See Exhibits R & T (Ownership + Dispute Timeline).

Page 4 of 13

FEB/Non-Consumer/Upfront Fee/02-01-2021

5

# Exhibit AB

## January 2, 2024 – LendingPoint Servicing Transition Notice

### Case No. 1:25-cv-04850 (NRM)(CHK)

**Purpose:**
This exhibit provides the email notice sent directly to Plaintiff by LendingPoint on January 2, 2024, advising that servicing of the disputed loan would transfer to Spring Oaks Capital, LLC.

**Key Provisions of the Notice:**

- Spring Oaks Capital, LLC identified as the new servicer.

- Effective date of servicing: December 25, 2023.

- LendingPoint to cease servicing as of December 24, 2023.

- No ownership transfer date specified.

**Legal Significance:**
This notice fatally undermines Defendants' Bill of Sale narrative:

1. The Bill of Sale claims a December 20, 2023 cutoff date for the transfer to Spring Oaks Capital, LLC.

2. The downstream assignment to Spring Oaks Capital SPV cites an even earlier December 8, 2023 cutoff date, predating any alleged upstream transfer.

3. The LendingPoint notice shows that Spring Oaks did not assume servicing until December 25, 2023, contradicting both cutoff dates and proving the timeline is irreconcilable.

Because Defendants did not author or acknowledge this notice, they cannot rely on it as proof of ownership or authority. Instead, the inconsistency between the Bill of Sale, the SPV transfer, and this LendingPoint notice establishes a chronological impossibility—supporting the inference of backdating, fabrication, and lack of lawful ownership or furnishing authority.

1

7/29/25, 12:45 AM

 Gmail

Ehab Hassan <ehabhassan@yagoat.com>
Business enail account - Not personal

## Notice of Account Sold

1 message

LendingPoint-NoReply <noreply@lendingpoint.com>                     Tue, Jan 2, 2024 at 4:16 PM
To: "ehabhassan@yagoat.com" <ehabhassan@yagoat.com>



1/2/2024    Email dated January 2, 2024 — proves this notice was sent after Spring Oaks began reporting to CRAs on December 20, 2023.

NOTICE OF ACCOUNT SOLD

Customer(s): Ehab Hassan

Account #: LAI-00757201

Dear Ehab Hassan:

While we wish we could have come to a more positive resolution, this letter is to provide notice that your loan account LAI-00757201 has been sold to Spring Oaks, effective 12/25/2023.

Sale effective 12/25/2023 — after credit reporting already began (see Exhibit C)

LendingPoint admits it retained control until 12/24 — confirming it was still the servicer at time of reporting.

LendingPoint will not service your account or collect your payments moving forward.  LendingPoint will stop accepting payments received from you on 12/25/2023.

Spring Oaks, or its agent, will service your account and contact you directly regarding resolution of your account balance after 12/25/2023.    Future-tense reference indicates Spring Oaks was not active prior to 12/25 — contradicts December 20 reporting date

For any inquiries regarding your account after this date, please refer to Spring Oaks contact information below.

2

**Spring Oaks:**

Spring Oaks Capital, LLC
P.O. Box 1216
Chesapeake, VA 23327 1216
(866) 281 3065

Regards,

**Mike Boyle**

| Senior Vice President |

mboyle@lendingpoint.com

1201 Roberts Blvd, Suite 200 Kennesaw, GA 30144

LendingPoint self-identifies as a debt collector, not the owner — confirming they never held consumer creditor rights

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

Debt collector disclosure — confirms that Spring Oaks had not yet contacted the consumer as of this message.

3

# Exhibit AG –

## Annotated Cover Sheets – LendingPoint to Spring Oaks Capital, LLC and Spring Oaks Capital, LLC to Spring Oaks Capital SPV, LLC

**Summary:**

This exhibit contains the June 2025 CFPB response from Spring Oaks Capital, LLC and the attached "Bill of Sale" they submitted to justify their reporting of the disputed loan. The materials show that:

- Spring Oaks Capital, LLC falsely claimed to be the current owner of the account;
- The true assignee, Spring Oaks Capital SPV, LLC, is never disclosed in the documentation;
- The Bill of Sale lacks a full Schedule of Accounts, contains no assignment chain, and fails to show legal title.

This misrepresentation is material, intentional, and supports Plaintiff's claims that:

- Spring Oaks Capital, LLC had no lawful basis to furnish or verify the account to credit bureaus;
- Their response to the CFPB was incomplete and deceptive;
- This violates FCRA § 623(a)(1)(A) (duty to furnish accurate information), as well as New York GBL § 349 (prohibiting deceptive practices).

This evidence directly undercuts Defendants' authority to report the tradeline and strengthens Plaintiff's claim for deletion and statutory damages

1

Submitted by Spring Oaks Capital, LLC in response to CFPB Complaint, June 29, 2025

We are pleased to provide you with the following items concerning this account:

(1) A copy of the signed contract; signed application; or a copy of a document sent to you while your account was active demonstrating that the debt was incurred by you (see enclosed).

(2) A copy of the charge-off account statement or equivalent document issued by the original creditor to you (see enclosed).

(3) Chain of Title Statement (see below).

(4) If applicable, enclosed are records reflecting the amount and date of any prior settlement agreement reached in connection with this account.

Thank you,

Spring Oaks Capital, LLC

Implication:
Submitting a knowingly inaccurate or incomplete Chain of Title to a federal agency such as the Consumer Financial Protection Bureau (CFPB) may constitute willful misrepresentation under FCRA 623(a)(1)(A) and 1681s-2(b)(1)(D).

This communication is from a debt collector.

CHAIN OF TITLE STATEMENT

1. First Electronic Bank
2. LendingPoint LLC
3. Spring Oaks Capital, LLC
4. Spring Oaks Capital SPV, LLC

This Chain of Title Statement lists First Electronic Bank as the originator, but the Bill of Sale (see page 2) shows LendingPoint acted on behalf of Coastal Community Bank.

The omission of Coastal creates a clear inconsistency and undermines Spring Oaks' verification credibility under FCRA 623(a)(1)(A) and 1681i(a)(6)(B)(iii).

**For New York Residents:**

This false chain omits a known transfer party. Coastal Community Bank is a critical Intermediary — proven by Spring Oaks' own Bill of Sale.
→ Raises doubts about legal ownership and reporting authority.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions; 9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and 11. Ninety percent of your wages or salary earned in the last sixty days.

**For New York City Residents:**

You may also reach us by calling Tim Rees at 866-539-7554. New York City Department of Consumer and Worker Protection license numbers: 2117984-DCWP and 2122260-DCWP.

2

DocuSign Envelope ID: 3246E47F-2C06-4BF3-A6CA-771A53FDE48F

Page 2

## BILL OF SALE

For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Account Purchase Agreement (the "Agreement") dated September 27, 2023 by and between LendingPoint LLC ("Seller") and Spring Oaks Capital LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, all rights, title and interest of Seller in the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on each Closing Date, and as further described in the Agreement.

Lot Number:

Aggregate Unpaid Balance: ▓▓▓▓▓▓▓

Number of Accounts:

DATED: December 20, 2023

> Buyer (Spring Oaks Capital, LLC) did not sign this Bill of Sale.
> - No evidence that Spring Oaks accepted the transfer or assumed legal ownership.
> - Undermines any claim to valid chain of title or reporting authority under FCRA 623(a)(1)(A) and 1681s-2(b).

SELLER: LendingPoint LLC

By _Greg McLaughlin_ _____

Name (print): Greg McLaughlin _____

Title: General Counsel _____

> Confirms Coastal Community Bank was the legal owner of the accounts at the time of sale. LendingPoint acted only as agent. This contradicts the chain of title Spring Oaks submitted to the CFPB, which entirely omits Coastal

SELLER: LendingPoint LLC, on behalf of Coastal Com...

By: _Greg McLaughlin_ _____

Name (print): Greg McLaughlin _____

Title: General Counsel _____

> Spring Oaks' chain of title (Part 3) claims a direct transfer from LendingPoint to Spring Oaks, omitting Coastal. This Bill of Sale proves that Coastal — not LendingPoint — was the actual transferor, undermining Spring Oaks' claimed verification and chain of ownership under FCRA 623(a)(1)(A).

3

# Exhibit M

## Loan Agreement Chain – eBay Merchant Targeting to Business Loan Execution

**Document Description**

This exhibit establishes a complete chronological chain of evidence proving that the LendingPoint loan in dispute was originated and administered as a business-purpose loan tied directly to Plaintiff's eBay merchant operations under Camelera Natural Products, LLC. The attached USPTO Trademark Registration Certificate for "YaGoat" (Reg. No. 7013661) further verifies Camelera as Plaintiff's business entity and confirms that the business-domain email used by LendingPoint in its solicitation was directly tied to the company.

**Chain of Evidence**

1. eBay Merchant Profile – Active store ("Homeopathic Remedy by YaGoat") confirming commercial operations under Camelera Natural Products, LLC.

2. eBay Account Contact Information – eBay retained only Plaintiff's personal Yahoo email, while LendingPoint deliberately targeted Plaintiff's business-domain email (ehabhassan@yagoat.com) for solicitation.

3. Pre-Qualification Email (Jan. 28, 2023) – Offer of $23,500 addressed to Plaintiff's business email and company name, with promotional language explicitly referencing business needs.

4. Loan Agreement Excerpt – Contains a "Sharing of Information" clause naming eBay, Inc. as a data-sharing party and referencing both Plaintiff and the business, confirming the commercial context of the loan.

5. **USPTO Trademark Certificate (YaGoat, Reg. No. 7013661) – Registered to Camelera Natural Products, LLC,** and listing **ehabhassan@yagoat.com** as the correspondence email, corroborating that LendingPoint's solicitation was directed to Plaintiff's verified business entity.

**Conclusion**

This progression — from merchant targeting, to business-domain solicitation, to a company-specific loan offer, and finally to both a loan agreement referencing eBay merchant activity and a **federal trademark certificate confirming Camelera Natural Products, LLC — demonstrates beyond doubt that the loan was commercial from inception.**

1

7/30/25, 10:29 PM

Homeopathic Remedy by YaGOAT | eBay Stores

Hi Ehab! ∨                                          ◇ Sell         My eBay ∨      🔔      🛒 ¹

# ebay

🔍 Search for anything ⃝

LendingPoint's business loan program specifically targeted eBay merchants — including active stores such as this one — for loan promotions.         Manage my store

anufactured by Camelera Natural

< > ǁ

# Homeopathic Remedy by YaGOAT

Active eBay merchant store associated with Camelera Natural Products, LLC.

**100%** positive feedback          **431** items sold      **41** followers      👍 Share      💬 Contact

Evidence of active commercial operations, not casual personal selling.

≡ Categories          Shop      Sale      **About**      Feedback

**About us** Business description showing product branding, manufacturing, and marketing consistent with commercial trade.

YaGoat is a brand covering a chain of all natural products manufactured by Camelera Natural

Products, LLC, a US based and family-owned company   Confirms store is operated under a registered business entity.

YaGoat products are the result of extensively researched ancient remedies that offer natural and

organic health care products as an alternative medicine to drugs.

YaGoat represents herbal health remedies that are effective, safe, and economical, as nature

intended.

YaGoat products are cruelty free and all-natural health solutions for those who wish to live healthy lives

and chemical free.

With YaGoat, you will tap into ancient wisdom and explore the power that nature can provide.

Location: **United States**

Member since: **Dec 29, 2016**   Longstanding merchant activity predating the loan, showing an established business relationship with eBay.

Seller profile: ihahassa-4

Unique merchant identifier linking the store to Plaintiff's eBay account.

2

"eBay Held Only Plaintiff's Personal Email — LendingPoint Chose to Target Business Email for Loan Solicitation



eBay's platform label for the account; does not determine the legal nature of the LendingPoint loan.

Shows eBay held only Plaintiff's personal email, not the business email used by LendingPoint, confirming intentional targeting of the business domain address for the loan offer.

Identifies Plaintiff as the registered account holder for this eBay merchant account.

3

8/14/25, 1:56 PM                    Camelera Natural Products, LLC Mail - Congratulations! You're pre-qualified for $23,500.

 Gmail

Company name and amount show this was targeted to the Plaintiff's business, not personal use.

Ehab Hassan <ehabhassan@yagoat.com>

Official business domain for Camelera Natural Products, LLC —- not the personal Yahoo email on file with eBay.

## Congratulations! You're pre-qualified for $23,500.
1 message

**LendingPoint Business Loans** <businessfunds@lendingpoint.com>                    Sat, Jan 28, 2023 at 2:08 PM
Reply-To: LendingPoint Business Loans <reply-fed0107675640478-68_HTML-294296739-100006165-16339@email.lendingpoint.com>
To: ehabhassan@yagoat.com

Email originates from LendingPoint's business loan division, confirming the commercial nature of the solicitation.

To view this email as a web page, go here.

 *POINT*

Great news, Ehab!
You could have **$23,500** in as soon as 24 business hours.

Join the millions of people who got the money they needed to achieve their goals. The loan specialists at LendingPoint standing by to help you complete your application today.

Promotional language explicitly references business needs, further confirming intended use.
*"They gave me a loan that met all of my business needs. The entire process was quick, easy, and painless. I am grateful for their efforts to make this possible and would definitely recommend them."*
- Ashley, TrustPilot

COMPLETE YOUR APPLICATION

**FAST**
Quick decisions and speedy deposits for eligible sellers

**TRANSPARENT**
No origination fees or early payback fees

**SIMPLE**
Get a loan without impacting your personal credit

CONTACT US

4

8/14/25, 1:56 PM

Camelera Natural Products, LLC Mail - Congratulations! You're pre-qualified for $23,500.

BusinessFunds@LendingPoint.com

(844) 779-7031

8am - 9pm  MON - FRI
10am - 9pm  SAT
10am - 4pm  SUN
(all hours EST)

---

This is a commercial message.    Explicit designation that the communication is commercial in nature, aligning with business loan marketing.

**Terms and Conditions**
* Applications for loans submitted may be funded by one of several lenders including: LendingPoint LLC, a Delaware limited liability company with its principal place of business in Kennesaw, Georgia; FinWise Bank, a Utah chartered bank, Member FDIC; First Electronic Bank, a Utah-chartered industrial bank, Member FDIC; and Coastal Community Bank, Member FDIC. Loan approval is not guaranteed. Actual loan offers, loan amounts, terms, and annual percentage rates (*APR*) may vary. Upon final underwriting approval to fund a loan, said funds are often sent via ACH the next non-holiday business day. Loans are offered from $500 to $50,000, at rates ranging from 9.99% to 35.99% with terms from 12 to 60 months. For example, a $10,000 loan serviced by LendingPoint over a period of 48 months that has an APR of 12.99% may have a payment of $268.23 per month (actual terms and interest rates depend on credit history, income, and other factors). The total amount due under the loan terms provided is $12,875.04. The total amount due is the total amount of the loan you will have paid after you have made all payments as scheduled.

Testimonials reflect the individual's opinion and may not be illustrative of all individual experiences.

This email was sent to: **ehabhassan@yagoat.com**

This email was sent by: LendingPoint
1201 Roberts Boulevard, Suite 200 Kennesaw, GA 30144 US

We respect your right to privacy - view our policy

Manage Subscriptions | Update Profile | Unsubscribe

5

Shows that the loan terms anticipate coordination between the Bank, LendingPoint, and eBay for merchant-related performance and account data

Source: Page 7 of Loan agreement, see
Exhibit E - Spring Oaks Capital, LLC Full CFPB Complaint Response (Un-Annotated)

Scope of shared data includes sensitive business and personal information tied to loan performance, further indicating a merchant loan relationship.

18. **SHARING OF INFORMATION.** You understand and agree that the Bank, LendingPoint, and eBay, Inc may share information amongst themselves about you and your business, this Agreement, and your performance under this Agreement. This information may include, but is not limited to, nonpublic personal information about you or your business, your payment history under this Agreement, and any other information obtained or maintained by the Bank, LendingPoint, or eBay, Inc. related in any manner to this Agreement or your relationship with any of these parties.

Agreement explicitly governs both the borrower as an individual and their business, confirming commercial context.

19. **USA PATRIOT ACT INFORMATION DISCLOSURE.** To help the government fight the funding of terrorism and money-laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Borrower has read and understood the above Agreement and agrees to the terms of this Agreement. Borrower agrees that loan proceeds will be used only for business purposes and not for any personal, family, household, or consumer purpose.

**NOTICE TO CUSTOMER**

a. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON EVERY PAGE, EVEN IF OTHERWISE ADVISED.
b. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
c. YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
d. YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.

*Ehab Hassan*

Signature of Borrower   01/28/2023

Ehab Hassan

Borrower Name

Loan agreement names eBay, Inc. as an information-sharing party, linking the loan to the borrower's eBay merchant activity.

### Authorization for Automatic Payments

If your account or card information is listed below, you agree to this Authorization for Automatic Payments and hereby authorize First Electronic Bank and its Assignees and servicers (herein, "we" or "us") to initiate electronic debits from your deposit or financial account or debit card designated below (your "Payment Account") for scheduled payments on the Promissory Note and Disclosure entered into above between you and First Electronic Bank ("Agreement"), including as revised from time to time. Any electronic debits from your bank account will be conducted via the Automated Clearing House ("ACH") system. Any debit(s) to your debit card will be conducted via the appropriate card network. By signing below, you authorize us to electronically debit your Payment Account (and, if necessary, electronically credit your Payment Account to correct erroneous debits) as follows:

The amount debited from your Payment Account on each scheduled due date will be the payment amount scheduled under the Agreement (including as revised) plus any applicable fees. The amount debited may range from the amount of the scheduled payment to an amount that is twice your scheduled payment(s) in any given month, or a lesser amount depending on your payment history. You agree that no prior notice needs to be provided to you if the amount debited from your account falls within this range. If the amount debited will exceed this range, we will provide notice at least ten (10) days before the scheduled date of the debit.

**Deposit Account Information (if ACH Debit selected):**

| | |
|---|---|
| Account Holder Name: | Ehab Hassan |
| Account Type: | Checking |
| Account Number: | 9463 |
| ABA/Routing Number: | 021000322 |
| Bank Name: | Bank of America |

**Card Information (if Debit Card selected):**

Card Account Number:
Card Expiration Date:

You have the authority to agree to electronic debits from this Payment Account and are not required to obtain the agreement or consent of any other person who owns or has a claim to funds in it (or you have obtained all required agreements and consents from such other person(s)). You agree that this Payment Account must have enough available collected funds or credit (as applicable) to cover the scheduled debit or charge. If your account does not have sufficient funds to cover the scheduled payment, your depository or financial institution ("Depository") or card issuer may charge you overdraft or other fees.. Transfers from savings accounts and money market accounts are limited. If an automatic transfer exceeds your limit the Depository or card issuer may decline it or charge you a fee. See your Depository or card issuer for details.

FEB/Non-Consumer/Upfront Fee/02-01-2021

6

Generated on: This page was generated by TSDR on 2025-04-29 23:17:51 EDT

Mark: YAGOAT



US Serial Number: 90851205

US Registration Number: 7013661

Filed as TEAS Plus: Yes

Register: Principal

Mark Type: Trademark

TM5 Common Status Descriptor:

Application Filing Date: Jul. 27, 2021

Registration Date: Mar. 28, 2023

Currently TEAS Plus: Yes

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: Mar. 28, 2023

Publication Date: Jun. 28, 2022    Notice of Allowance Date: Aug. 23, 2022

## Mark Information

Mark Literal Elements: YAGOAT

Standard Character Claim: No

Mark Drawing Type: 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S) /NUMBER(S)

Description of Mark: The mark consists of the word YAGOAT written in stylized White font, where the letter G is depicted by a stylized curved arrow in Orange. The color black appearing in the mark is background and not claimed as a feature of the mark.

Color Drawing: Yes

Color(s) Claimed: The color(s) White and Orange is/are claimed as a feature of the mark.

Lining and Stippling Statement: The stippling is for shading purposes only.

Design Search Code(s): 26.11.21 - Rectangles that are completely or partially shaded

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Massage oil; Massage oils

International Class(es): 003 - Primary Class

U.S Class(es): 001, 004, 006, 050, 051, 052

Class Status: ACTIVE

First Use: Dec. 01, 2021

Use in Commerce: Jan. 01, 2022

For: Dietary supplements for human consumption

International Class(es): 005 - Primary Class

U.S Class(es): 005, 006, 018, 044, 046, 051, 052

7

Class Status: ACTIVE

First Use: Jul. 01, 2022                  Use in Commerce: Aug. 01, 2022

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | No | Currently Use: | Yes |
| Filed ITU: | Yes | Currently ITU: | No |
| Filed 44D: | No | Currently 44D: | No |
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

Owner Name: Camelera Natural Products, LLC

Owner Address: 68.84.45.114
7902 Bay Parkway, C1
Brooklyn, NEW YORK UNITED STATES 11214

Legal Entity Type: LIMITED LIABILITY COMPANY          State or Country
Where Organized:

## Attorney/Correspondence Information

### Attorney of Record

Docket Number: 90851205

### Correspondent

Correspondent Name/Address: Camelera Natural Products, LLC
7902 Bay Parkway, C1
68.84.45.114
Brooklyn, NEW YORK UNITED STATES 11214

Phone: 347-216-3585

Correspondent e-mail: connectionusacompany@gmail.com ehabehassan@yahoo.com ehabhassan@yagoat.com info@yagoat.com      Correspondent e-mail Authorized: Yes

Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 28, 2023 | NOTICE OF REGISTRATION CONFIRMATION EMAILED | |
| Mar. 28, 2023 | REGISTERED-PRINCIPAL REGISTER | |
| Feb. 21, 2023 | NOTICE OF ACCEPTANCE OF STATEMENT OF USE E-MAILED | |
| Feb. 19, 2023 | ALLOWED PRINCIPAL REGISTER - SOU ACCEPTED | |
| Feb. 17, 2023 | STATEMENT OF USE PROCESSING COMPLETE | |
| Jan. 12, 2023 | USE AMENDMENT FILED | |
| Feb. 10, 2023 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | |
| Jan. 12, 2023 | TEAS STATEMENT OF USE RECEIVED | |
| Aug. 23, 2022 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Jun. 28, 2022 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Jun. 28, 2022 | PUBLISHED FOR OPPOSITION | |
| Jun. 08, 2022 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| May 24, 2022 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| May 24, 2022 | EXAMINER'S AMENDMENT ENTERED | |
| May 24, 2022 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | |
| May 24, 2022 | EXAMINERS AMENDMENT E-MAILED | |
| May 24, 2022 | EXAMINERS AMENDMENT -WRITTEN | |
| May 06, 2022 | TEAS/EMAIL CORRESPONDENCE ENTERED | |

8

| | |
|---|---|
| May 05, 2022 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| May 05, 2022 | TEAS REQUEST FOR RECONSIDERATION RECEIVED |
| May 05, 2022 | NOTIFICATION OF FINAL REFUSAL EMAILED |
| May 05, 2022 | FINAL REFUSAL E-MAILED |
| May 05, 2022 | FINAL REFUSAL WRITTEN |
| Apr. 27, 2022 | TEAS/EMAIL CORRESPONDENCE ENTERED |
| Apr. 27, 2022 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| Apr. 27, 2022 | TEAS RESPONSE TO OFFICE ACTION RECEIVED |
| Apr. 26, 2022 | TEAS/EMAIL CORRESPONDENCE ENTERED |
| Apr. 26, 2022 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| Apr. 26, 2022 | TEAS RESPONSE TO OFFICE ACTION RECEIVED |
| Apr. 26, 2022 | NOTIFICATION OF NON-FINAL ACTION E-MAILED |
| Apr. 26, 2022 | NON-FINAL ACTION E-MAILED |
| Apr. 26, 2022 | NON-FINAL ACTION WRITTEN |
| Apr. 21, 2022 | ASSIGNED TO EXAMINER |
| Sep. 25, 2021 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Sep. 24, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jul. 30, 2021 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

TM Staff Information - None

File Location

Current Location: PUBLICATION AND ISSUE SECTION          Date In Location: Feb. 19, 2023

9

# Exhibit N

## Business Account Activity Confirming Commercial Loan Funding and Repayment

### Document Description

This exhibit contains **business bank account records** from **Camelera Natural Products, LLC,** which demonstrate that the disputed LendingPoint loan was a **business-purpose obligation** from inception.

### Key Evidence

1. **Loan Proceeds Deposit** – Bank statement showing direct deposit of the LendingPoint loan into the company's **business checking account.**

2. **Repayment Deductions** – Bank records showing automatic loan payment withdrawals from the same business account.

### Confirmed Facts

- The loan funds were deposited **to a business entity,** not to Plaintiff personally.

- All repayments were made from the **business's account,** reinforcing the commercial nature of the transaction.

- The account activity is **consistent with standard business financing practices,** and **inconsistent with personal consumer loans.**

**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

CAMELERA NATURAL PRODUCTS, LLC
7902 BAY PKWY APT C1
BROOKLYN, NY 11214-1920

BANK OF AMERICA
**Preferred Rewards**
For Business

### Customer service information

📞  1.888.BUSINESS (1.888.287.4637)

✉  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Advantage Fundamentals™ Banking
## Preferred Rewards for Bus Gold
for January 1, 2023 to January 31, 2023

Account number: 4830 7808 9463

**CAMELERA NATURAL PRODUCTS, LLC**

## Account summary

| | | |
|---|---:|---|
| Beginning balance on January 1, 2023 | $3,205.39 | # of deposits/credits: 27 |
| Deposits and other credits | 20,508.02 | # of withdrawals/debits: 69 |
| Withdrawals and other debits | -3,675.89 | # of items-previous cycle[1]: 5 |
| Checks | -1,521.31 | # of days in cycle: 31 |
| Service fees | -0.00 | Average ledger balance: $3,385.19 |
| **Ending balance on January 31, 2023** | **$18,516.21** | [1]*Includes checks paid, deposited items and other debits* |

## Go paperless. It's more secure.

BUSINESS ADVANTAGE

Reduce the risk of lost or stolen mail. Plus, you can view your statements securely and easily—online or from our mobile app—24/7 from almost anywhere.

Simply use our **Mobile Banking app** or sign in to Business Advantage 360 and click on **Profiles & Settings** (in the upper right, next to Sign Out).

Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

SSM-01-22-2806.B | 4019267

2

CAMELERA NATURAL PRODUCTS, LLC | Account # 4830 7808 9463 | January 1, 2023 to January 31, 2023

## Deposits and other credits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 01/17/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 17.95 |
| 01/18/23 | WALMART      DES:XXXXXXXXX  ID:366183675861920  INDN:CAMELERA NATURAL PRODU  CO ID:4216028    CCD  PMT INFO:WAL-MART STORES, INC PAYMENT | 198.12 |
| 01/23/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 157.81 |
| 01/23/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 146.52 |
| 01/23/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 85.25 |
| 01/24/23 | BKOFAMERICA ATM 01/24 #000001400 DEPOSIT BENSONHURST      BROOKLYN      NY | 1,806.00 |
| 01/26/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 78.97 |
| 01/27/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 37.69 |
| 01/30/23 | FEB_LENDINGPOINT DES:PAYMENT   ID:LAI000757201  INDN:EHAB HASSAN      CO ID:XXXXXXXXX PPD | 16,092.17 |
| 01/31/23 | WALMART      DES:XXXXXXXXX  ID:366183690732435  INDN:CAMELERA NATURAL PRODU  CO ID:4216028    CCD  PMT INFO:WAL-MART STORES, INC PAYMENT | 199.06 |
| 01/31/23 | M MERCHANT      DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 18.85 |

**Total deposits and other credits**                                                        **$20,508.02**

Business loan proceeds deposited – confirms commercial nature of loan.

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 01/03/23 | M MERCHANT      DES:MTHLY FEES ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -110.64 |
| 01/03/23 | AUTHNET GATEWAY DES:BILLING    ID:XXXXXXXXX  INDN:CAMELERA NATURAL PRODU  CO ID:1870568569 CCD | -25.00 |
| 01/03/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -3.01 |
| 01/05/23 | BEARFLEXIVLLC    DES:REMITTANCE ID:83719999090  INDN:CameleraNaturalProdu    CO ID:4203050521 CCD | -1,364.75 |
| 01/05/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -1.81 |
| 01/06/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -1.58 |
| 01/09/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -5.21 |
| 01/09/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -0.79 |
| 01/13/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -3.12 |
| 01/17/23 | M MERCHANT      DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -3.39 |

*continued on the next page*

3

**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

CAMELERA NATURAL PRODUCTS, LLC
7902 BAY PKWY APT C1
BROOKLYN, NY  11214-1920

BANK OF AMERICA
Preferred Rewards
For Business

### Customer service information

☎ 1.888.BUSINESS (1.888.287.4637)

💻 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

▓▓▓▓ Bank Record Showing Loan Payment Debited From Business Account

## Your Business Advantage Fundamentals™ Banking
Preferred Rewards for Bus Gold

As in the agreement

for March 1, 2023 to March 31, 2023

Account number: 4830 7808 9463

CAMELERA NATURAL PRODUCTS, LLC

## Account summary

| | | |
|---|---:|---|
| Beginning balance on March 1, 2023 | $14,790.92 | # of deposits/credits: 27 |
| Deposits and other credits | 1,961.83 | # of withdrawals/debits: 59 |
| Withdrawals and other debits | -7,721.59 | # of items-previous cycle[1]: 1 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -0.00 | Average ledger balance: $9,851.72 |
| **Ending balance on March 31, 2023** | **$9,031.16** | [1]Includes checks paid, deposited items and other debits |



## Account security you can see

Check your security meter level and watch it rise as you take action to help protect against fraud. See it in the Mobile Banking app and Online Banking.

To learn more, visit **bofa.com/SecurityCenter** or **scan this code.**



When you use the QRC feature, certain information is collected from your mobile device for business purposes. Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

SSM-12-22-0030A I 5197654

4

CAMELERA NATURAL PRODUCTS, LLC  |  Account # 4830 7808 9463  |  March 1, 2023 to March 31, 2023

## Deposits and other credits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 03/21/23 | M MERCHANT    DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD | 129.17 |
| 03/23/23 | PAYPAL*Hassan  03/23 #000077936 PMNT RCVD PAYPAL*Hassan eha  San Jose    CA | 105.26 |
| 03/27/23 | PAYPAL*Hassan  03/26 #000601472 PMNT RCVD PAYPAL*Hassan eha  San Jose    CA | 79.68 |
| 03/27/23 | Transfer AMAZON.COM | 78.34 |
| 03/28/23 | WALMART    DES:XXXXXXXXX ID:366183774203295  INDN:CAMELERA NATURAL PRODU  CO ID:4216028   CCD  PMT INFO:WAL-MART STORES, INC PAYMENT | 148.48 |
| 03/28/23 | M MERCHANT    DES:CR CD DEP  ID:690550110073841  INDN:CAMELERA NATURAL PRODU  CO ID:6905442114 CCD  PMT INFO:CAMELERA NATURAL PRODUCTS | 76.49 |
| 03/28/23 | CHECKCARD  0327 AMAZON.COM AMZN.COM/BIL AMZN.COM/BILLWA 7443106308608300760 | 34.73 |
| 03/31/23 | PAYPAL*Hassan  03/31 #000343736 PMNT RCVD PAYPAL*Hassan eha  San Jose    CA | 80.31 |
| 03/31/23 | PAYPAL*Hassan  03/31 #000050375 PMNT RCVD PAYPAL*Hassan eha  San Jose    CA | 19.22 |
| **Total deposits and other credits** | | **$1,961.83** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 03/02/23 | M MERCHANT    DES:MTHLY FEES ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -242.57 |
| 03/02/23 | AUTHNET GATEWAY DES:BILLING   ID:XXXXXXXXX INDN:CAMELERA NATURAL PRODU  CO ID:1870568569 CCD | -25.00 |
| 03/02/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -3.58 |
| 03/06/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -2.32 |
| 03/06/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -1.82 |
| 03/07/23 | BEARFLEXIVLLC   DES:REMITTANCE ID:85513570090 INDN:CameleraNaturalProdu   CO ID:4203050521 CCD | -1,364.75 |
| 03/08/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -2.32 |
| 03/09/23 | LENDINGPOINTLLC DES:PAYMENT   ID:LPT0011236722  INDN:EHAB HASSAN         CO ID:1856315610 PPD  PMT INFO:LAI000757201   LPT0011236722 | -1,455.00 |
| 03/15/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -4.06 |
| 03/20/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -4.61 |
| 03/20/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -1.97 |
| 03/21/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -5.67 |
| 03/28/23 | M MERCHANT    DES:DLY DISC S ID:690550110073841  INDN:CAMELERA NATURAL PRODU CO ID:6905442114 CCD | -3.36 |

continued on the next page

Loan repayment deducted from business account – consistent with business-purpose designation

5

# Exhibit Q

## Annotated Assignment Agreement – Spring Oaks Capital, LLC to Spring Oaks Capital SPV, LLC
## Dated: December 20, 2023

### Document Description

This exhibit contains the **Assignment Agreement** dated **December 20, 2023**, executed between **Spring Oaks Capital, LLC (Seller)** and **Spring Oaks Capital SPV, LLC (Purchaser)**. The agreement is signed by the same executive, **Timothy Stapleford**, on behalf of both entities.

### Key Issues Identified

- **Cutoff Date Conflict** – Agreement references a **December 8, 2023 cutoff date**, predating the alleged LendingPoint sale (December 25, 2023 – see Exhibit AB), raising questions about how Spring Oaks Capital, LLC could sell what it did not yet own.

- **Shared Signatory** – The same executive signed for both entities, underscoring a **conflict of interest** and reinforcing the claim that **SPV functions as a pass-through entity.**

- **Missing Documentation** – No **Schedule A**, no record of loan-level details, and no third-party oversight — all undermining the legitimacy of the assignment.

- **Legal Inconsistency** – Despite this agreement, **Spring Oaks Capital, LLC continued furnishing tradeline data as creditor** after December 20, 2023, contradicting its claimed transfer of ownership.

### Confirmed Violations

- **FCRA § 607(b)** – Failure to maintain maximum possible accuracy.

- **FCRA § 623(a)** – Furnishing information without ownership or authority.

- **FCRA § 611(a)** – Failure to properly reinvestigate after disputes.

- **NY GBL § 349** – Deceptive business practices through misrepresentation of ownership.

### Purpose of Exhibit Q:

To show that the **December 20, 2023 assignment is defective, conflicted, and unsupported,** and that Spring Oaks Capital, LLC and SPV acted interchangeably to misrepresent ownership and furnishing authority, rendering the tradeline **materially deceptive and unauthorized.**

1

Ownership of this account transferred to SPV on December 20, 2023 — yet Spring Oaks Capital, LLC continued to furnish tradeline data as creditor. This misreporting violates FCRA 623(a)(1)(A).

## ASSIGNMENT

ASSIGNMENT, dated as of December 20, 2023 (this "Assignment"), between Spring Oaks Capital SPV, LLC, as Purchaser (the "Purchaser"), and Spring Oaks Capital, LLC, as Seller (the "Seller").

### WITNESSETH

WHEREAS, the Purchaser and the Seller are parties to the Purchase Agreement, dated as of September 21, 2023 (as the same may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement"), between the Purchaser and the Seller; and

WHEREAS, pursuant to the Purchase Agreement, the Seller wishes to sell and/or contribute Portfolios, Related Receivables, and related Other Conveyed Property (as each such term is defined in the Purchase Agreement) to the Purchaser hereunder.

NOW, THEREFORE, in consideration of the premises and the mutual agreements hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller, intending to be legally bound, hereby agree as follows:

1. Definitions. All terms defined in the Purchase Agreement (whether directly or by reference to other documents) and used herein shall have such defined meanings when used herein, unless otherwise defined herein. This predates the December 20, 2023 sale date, raising questions about how Spring Oaks Capital, LLC could set a cutoff date prior to its own receipt of the loan portfolio (allegedly not effective until December 25, 2023, per LendingPoint's email – Exhibit AB).

"Cutoff Date" means, with respect to the Portfolio of Receivables and the related Other Conveyed Property being conveyed hereby, December 08, 2023.

"Portfolio Purchase Price" means ▮▮▮▮▮▮▮▮, which represents the full amount paid by the Seller to acquire the related Portfolio.

2. Conveyance of Receivables. Subject to the conditions specified in Section 2.1 of the Purchase Agreement and subject to the mutually agreed upon terms contained in the Purchase Agreement, the Seller does hereby sell, transfer, assign, set over and otherwise convey to the Purchaser, without recourse (subject to the obligations set forth herein and in the Purchase Agreement), all right, title and interest of the Seller in and to the following:

(a) The Portfolios and the Related Receivables listed on Schedule A to this Assignment and all monies received with respect to such Related Receivables on and after the related Cutoff Date;

(b) any Instruments, including Promissory Notes (each as defined in the UCC) and other documents that the Seller (or its designee) kept on file in accordance with its customary procedures relating to the Related Receivables and the related Obligors;

(c) the Seller's rights and interest in, to, and under each applicable Portfolio Acquisition Agreement to the extent related to the Portfolios and the Related Receivables (whether arising pursuant to the terms of any such agreement or otherwise available to the Seller at law or in equity), including the rights of the Seller to enforce the Portfolio Acquisition Agreements and to give or withhold any and all consents, requests, notices, directions, approvals, extensions or waivers under or with respect to any such agreement to the extent related to the Portfolios or the Related Receivables;

Debt Assignment Agreement & Conveyance of Receivables

2

(d)      all present and future claims, demands, causes and choses in action in respect of any of the foregoing; and

(e)      all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all cash and non-cash proceeds, and other property consisting of, arising from or relating to all or any part of any of the foregoing.

3.      Restatement of Representations and Warranties of Seller. The Seller hereby restates the representations and warranties set forth in Sections 3.1 of the Purchase Agreement (with respect to the Portfolios and the Related Receivables specified in the attached addendum to the Schedule of Receivables attached as Schedule A hereto) with full force and effect as if the same were fully set forth herein. The Seller hereby certifies that all conditions precedent set forth in Section 2.1(b) of the Purchase Agreement have been satisfied.

4.      Restatement of Representations and Warranties of Purchaser. The Purchaser hereby restates the representations and warranties set forth in Section 4.1 of the Purchase Agreement with full force and effect as if the same were fully set forth herein. The Purchaser hereby certifies that all conditions precedent set forth in Section 2.1(b) of the Purchase Agreement have been satisfied.

5.      Transfer and Sale of Receivables. The Seller hereby certifies that the Portfolios, Related Receivables and Other Conveyed Property transferred to the Purchaser hereunder are free and clear of all Liens (other than Permitted Liens) and that the beneficial interest in and title to such Related Receivables and Other Conveyed Property shall not be part of the Seller's estate in the event of the filing of a bankruptcy petition by or against the Seller under any bankruptcy law. If, notwithstanding the intent of the Seller, the transfer and assignment contemplated hereby and under the Purchase Agreement is held not to be a sale or contribution, the transfer and assignment of such Portfolios, Related Receivables and Other Conveyed Property hereunder shall constitute, and the Seller hereby grants to the Purchaser, to secure its obligations hereunder, a security interest in the property referred to in Section 2 above, and this Assignment and the Purchase Agreement shall each constitute a security agreement under applicable law.

6.      Further Encumbrance of Receivables and Other Conveyed Property.

(a)      Immediately upon the conveyance to the Purchaser by the Seller of the Portfolios, the Related Receivables and any item of related Other Conveyed Property pursuant to Section 2 above, and the payment by the Purchaser of the Portfolio Purchase Price, all right, title and interest of the Seller in and to such Portfolios, Related Receivables and Other Conveyed Property shall terminate and all such right, title and interest shall vest in the Purchaser.

(b)      Immediately upon the vesting of such Portfolios, Related Receivables and Other Conveyed Property in the Purchaser, the Purchaser shall have assumed the sole right to pledge or otherwise encumber such Portfolios, Related Receivables and related Other Conveyed Property.

7.      Counterparts. This Assignment may be executed in two or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same Instrument.

8.      Governing Law. THIS ASSIGNMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

3

IN WITNESS WHEREOF, the undersigned have caused this Assignment to be duly executed and delivered as of the day and year first above written.

**SPRING OAKS CAPITAL SPV, LLC,**
  as Purchaser

Both entities (LLC and SPV) share the same owner and operate under the Jurisdiction of New York law.

This proves that the LLC cannot legally disclaim its role as a furnisher, as both entities are interconnected.

By: _____
Name:  Timothy Stapleford
Title:  President and Chief Executive Officer

**SPRING OAKS CAPITAL, LLC,**
  as Seller

By: _____
Name: Timothy Stapleford
Title: President and Chief Executive Officer

Source: Defendants' CFPB Response (produced June 29, 2025, unannotated).
Note: This annotated summary is provided for clarity and emphasis only; the original CFPB response remains available in the reord.

3
4

# Exhibit R

## Ownership & Reporting Authority Discrepancies

**Description:**
This exhibit compiles four documents showing fatal defects in Spring Oaks Capital, LLC's claimed ownership and authority to furnish data to CRAs.

**Evidence:**

1. **Bill of Sale** – Purports transfer from LendingPoint LLC to Spring Oaks Capital, LLC, but: not signed by Buyer; references missing Forward Flow Agreement; executed by LendingPoint "on behalf of Coastal Community Bank" with no proof of Coastal's connection.

2. **Chain of Title Statement (CFPB Response, June 29, 2025)** – Lists First Electronic Bank as originator, omits Coastal entirely, conflicts with Bill of Sale.

3. **Promissory Note** – Identifies First Electronic Bank as originator, contradicting Bill of Sale and undermining LendingPoint's transfer authority.

4. **TransUnion Credit Report Screenshot** – Shows Spring Oaks as reporting party, classifies account as "Factoring Company Account," and lists First Electronic Bank as original creditor (not Coastal or LendingPoint).

**Confirmed Issues:**

- Missing/contradictory chain of title – no consistent proof of ownership.

- Misidentified parties – Coastal inserted in some documents, absent in others.

- No clear authorization for Spring Oaks to report the account.

**Purpose:**
Demonstrates Spring Oaks Capital, LLC's failure to prove ownership or authority, rendering its tradeline materially deceptive, unauthorized, and violative of FCRA §§ 607(b), 623(a), and 611(a).

1

DocuSign Envelope ID: 3246E47F-2C06-4BF3-A6CA-771A53FDE48F
Source: Defendants' CFPB Response (produced June 29, 2025, unannotated).
Note: This annotated summary is provided for clarity and emphasis only;
the original CFPB response remains available in the record.

Not disclosed                    BILL OF SALE

For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Account Purchase Agreement (the "Agreement") dated September 27, 2023 by and between LendingPoint LLC ("Seller") and Spring Oaks Capital LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, all rights, title and interest of Seller in the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on each Closing Date, and as further described in the Agreement.

Lot Number: ▉▉▉▉

Aggregate Unpaid Balance: ▉▉▉▉

Number of Accounts: ▉

DATED: December 20, 2023

Lendingpoint is not the lender. No proof of ownership or authority to sell the debt

No signature of the buyer, Spring Oaks Capital, LLC

SELLER: LendingPoint LLC

By: _Greg McLaughlin_____

Name (print): Greg McLaughlin_____

Title: General Counsel_____

Costal Community Bank is not the lender. No proof of ownership provided

No proof of authorization from CCB to Lendingpoint

SELLER: LendingPoint LLC, on behalf of Coastal Com

By: _Greg McLaughlin_____

Name (print): Greg McLaughlin_____

Title: General Counsel_____

2

We are pleased to provide you with the following items concerning this account:

(1) A copy of the signed contract; signed application; or a copy of a document sent to you while your account was active demonstrating that the debt was incurred by you (see enclosed).

(2) A copy of the charge-off account statement or equivalent document issued by the original creditor to you (see enclosed).

(3) Chain of Title Statement (see below).

(4) If applicable, enclosed are records reflecting the amount and date of any prior settlement agreement reached in connection with this account.

Thank you,

Spring Oaks Capital, LLC

This communication is from a debt collector.

CHAIN OF TITLE STATEMENT

1. First Electronic Bank
2. LendingPoint LLC
3. Spring Oaks Capital, LLC
4. Spring Oaks Capital SPV, LLC

**Implication:**

Submitting a knowingly inaccurate or incomplete chain of title to a federal agency such as The Consumer Financial Protection Bureau (CFPB) may consitute willful misrepresentation under FCRA 623(a)(1)(A) and 1681s-2(b)(1)(D)

This chain of title statement lists First National Bank as the originator, but the bill of sale shows Lendingpoint act on behalf of COSTAL COMMUNITY BANK.

The omission of COSTAL creates a clear inconsitstency and undermines Spring Oaks' credibilty under FCRA 623(a)(1)(A) and 1681i(a)(6)(B)(iii)

**For New York Residents:**

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions; 9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and 11. Ninety percent of your wages or salary earned in the last sixty days.

**For New York City Residents:**

You may also reach us by calling Tim Rees at 866-539-7554. New York City Department of Consumer and Worker Protection license numbers: 2117984-DCWP and 2122260-DCWP.

3

# Promissory Note and Disclosures

This document describes the terms and conditions of your First Electronic Bank loan. You agreed that you will not use the loan proceeds for personal, family, household or consumer purposes. The Credit Cost Disclosures below are part of this Promissory Note.

This Promissory Note contains an arbitration agreement that provides that you and we agree to submit to binding arbitration of any dispute under this Promissory Note or any dealings in connection with this promissory note and not through litigation in any court. See Section 16 below.

| PROMISSORY NOTE NUMBER: APP-0033206944 | AGREEMENT DATE: 01/28/2023 |
|---|---|
| BORROWER:  Ehab Hassan<br>7902 Bay Parkway<br>Brooklyn, NY<br>11214<br>Email address: chabhassan@yogool.com | LENDER   FIRST ELECTRONIC BANK<br>2150 S 1300 E, SUITE 400<br>SALT LAKE CITY, UT 84106 |

## CREDIT COST DISCLOSURES

| Disbursed Loan Amount | One Fixed Finance Charge | Amount Due |
|---|---|---|
| The principal loan amount disbursed to you or on your behalf. | The dollar amount the credit will cost you. | The Disbursed Loan Amount plus the One Fixed Finance Charge equal the total amount due by you under this Agreement (subject to any additional fees or amounts that may come due and owing under other provisions of this Agreement). |
| $16,092.17 | $1,367.83 | $17,460.00 |

YOUR PAYMENT SCHEDULE RELATED TO THE AMOUNT DUE WILL BE:

4

4

**SPRING OAKS CAPITAL LLC 11272****    https://annualcreditreport.transunion.com/dss/disclosure.page

## Account Information

| | |
|---|---|
| Address | PO BOX 1216 CHESAPEAKE, VA 23327 |
| Phone | (833) 418-3085 |
| Date Opened | 12/20/2023 |
| Responsibility | Individual Account |
| Account Type | Open Account |
| Loan Type | FACTORING COMPANY ACCOUNT |
| Balance | $13,095 |
| Date Updated | 05/09/2025 |
| High Balance | $13,095 |
| Original Creditor | → FIRST ELECTRONIC BANK |
| Past Due | $13,095 |

5

# Exhibit T

## Chronological Record of Dispute Activity — Spring Oaks Capital, LLC & SPV

**Document Description**

- This chronology provides a step-by-step record of Plaintiff's disputes, complaints, and communications with Defendants and the credit reporting agencies. Each entry is cross-referenced to supporting exhibits where available. Certain referenced exhibits (e.g., F, A, D, G, H, L, P, I, J, K) are maintained in Plaintiff's Master Exhibit Binder but are not attached to this Amended Verified Complaint. They remain available and can be produced upon request.

- The chronology demonstrates a repeated pattern of willful noncompliance, reinforcing Plaintiff's claims under the Fair Credit Reporting Act (FCRA), New York General Business Law § 349, and related statutes.

**Purpose of Exhibit T**
To serve as a master chronology tying together the documentary record and showing that Defendants had repeated notice of misreporting, failed to correct inaccuracies, and thereby forced escalation to litigation.

1

**Exhibit T**

**Chronological Record of Dispute Activity Regarding Spring Oaks Capital, LLC**

1. **Jan 28, 2023** – Received **Pre-Qualification Email** from LendingPoint for a business loan. Establishes commercial intent and context. (**Exhibit M – Loan Agreement Chain**)

2. **Jan 28, 2023 – Signed the Business Loan Agreement.** Confirms a commercial-purpose obligation, not a consumer credit transaction. (*Exhibit AA – Business Loan Agreement Summary – Annotated*)

3. **Jan 30, 2023** – Business bank statement shows **loan proceeds deposited** into a business checking account. (**Exhibit N – Business Bank Records: Loan Proceeds Deposit & Repayment Deductions**)

4. **Mar 9, 2023** – Bank record shows **loan payment debited** from the business account, further proving commercial use. (**Exhibit N**)

5. **Dec 20, 2023** – Spring Oaks Capital, LLC and Spring Oaks Capital SPV, LLC operate from the same address and are managed by the same individual(s). This common control supports that the reporting entity knew the ownership structure and willfully misrepresented the true debt owner. The overlap supports joint liability and willful noncompliance under **FCRA § 623(b)(1)(A)–(E), § 607(b)**, and **NY GBL § 349**. (**Exhibit X**)

6. **May 31, 2025** – Sent a **direct dispute** to Spring Oaks Capital, LLC via certified mail with return receipt. (**Exhibit F**)

7. **May 31, 2025** – Sent **dispute letters** to Experian, TransUnion, and Equifax via certified mail with return receipts. (**Exhibit A**)

8. **Jun 15, 2025** – Filed a **CFPB complaint** (Case #250615-21561174) against Spring Oaks Capital, LLC for failure to validate the account. (**Exhibit D**)

9. **Jun 16, 2025** – Sent a **formal demand letter** to Spring Oaks Capital, LLC requesting deletion of the tradeline. (**Exhibit G**)

10. **Jun 17, 2025** – Sent a **final escalation warning** letter to Spring Oaks Capital, again demanding deletion. (**Exhibit H**)

11. **Jun 29, 2025** – Spring Oaks Capital submitted documentation to the **CFPB** in response to the complaint; their materials acknowledge the business-purpose context. (**Exhibit E – Spring Oaks Capital, LLC Full CFPB Complaint Response (Un-Annotated)**)

2

12. **Jun 30, 2025** – Filed a **second CFPB complaint** (Case #250701-21965258) against the CRAs, citing prior evidence of commercial loan misuse. **(Exhibit L – CFPB Complaint Detail – CRA Failures to Verify Spring Oaks Loan Dispute)**

13. **Jul 5, 2025** – Received Spring Oaks' response dated June 29, **postmarked July 5** and **received July 13, 2025** — violating **FCRA § 623(a)(8)(E)(i)**. (Spring Oaks' response mischaracterized the dispute; Plaintiff challenged classification and ownership, not identity/amount.) **(Exhibit P – Annotated)**

14. **Jul 13, 2025** – Filed a **complaint with the New York State Attorney General** (Submission #1-1090858902). **(Exhibit I)**

15. **Jul 13, 2025** – Filed a **BBB complaint** (Case ID #23592670) against Spring Oaks Capital, LLC. **(Exhibit J)**

16. **Jul 14, 2025** – Sent **Final Pre-Litigation Notice** to Spring Oaks Capital via UPS Express, warning of imminent legal action. **(Exhibit K)**

17. **Jul 25, 2025** – Filed this **civil court complaint** in Kings County, NY (see **Exhibit U – Legal Violations Matrix; Exhibit K – Pre-Litigation Notice**).

3

# Exhibit U

## Legal Violations Matrix – FCRA, Regulation Z, NY GBL § 349, NYC Admin Code § 20-490

**Case No. 1:25-cv-04850 (NRM)(CHK)**

**Document Description:**

This exhibit provides a categorized matrix of 33 statutory violations committed by Defendants Spring Oaks Capital, LLC and Spring Oaks Capital SPV, LLC, arising from their unlawful reporting and misclassification of a business-purpose loan as a consumer tradeline.

Categories of Violations Documented:

- Federal Violations – FCRA

- Lack of Ownership / Unauthorized Furnishing

- Ratification After Notice

- State Violations – NY GBL § 349

- City Violations – NYC Admin Code § 20-490

**Purpose of Exhibit U:**
To provide the Court with a clear, categorized record of statutory violations supporting Plaintiff's claims for statutory damages, injunctive relief, and declaratory relief under federal, state, and city law.

1

# Exhibit U

## Legal Violations Matrix

**Defendants:** Spring Oaks Capital, LLC & Spring Oaks Capital SPV, LLC

**Case:** 1:25-cv-04850 (NRM)(CHK)

**Total Violations Documented: 33 (Enforceable + Contextual)**

### I. Federal Violations – FCRA (Privately Enforceable)

1.    **§ 1681s-2(b)(1)(A)** – Failure to conduct a reasonable investigation after Plaintiff's dispute.

2.    **§ 1681s-2(b)(1)(B)** – Failure to review all relevant information provided by the consumer.

3.    **§ 1681s-2(b)(1)(C)** – Failure to report the results of reinvestigation to CRAs.

4.    **§ 1681s-2(b)(1)(D)** – Failure to correct, delete, or block inaccurate information.

5.    **§ 1681s-2(b)(1)(E)** – Failure to modify or delete incomplete or unverifiable data.

6.    **§ 1681s-2(b)(3)** – Failure to provide CRAs with supporting documentation during reinvestigation.

7.    **§ 1681e(b)** – Failure to follow reasonable procedures to ensure maximum possible accuracy of reported information.

8.    **§ 1681i(a)(1)(A)** – Causing or contributing to continued reporting of inaccurate information by CRAs.

9.    **§ 1681i(a)(6)(B)(iii)** – Failure to provide consumer with description of procedure used to determine accuracy.

10.    **§ 1681g(a)** – Failure to provide Plaintiff with full file disclosure upon written request.

11.    **§ 1681n** – Civil liability for willful noncompliance with FCRA.

12.    **§ 1681o** – Civil liability for negligent noncompliance with FCRA.

2

## II. Federal Violations – FCRA (Regulatory Only – Pled for Context) 3

Note: These subsections are acknowledged by courts as enforceable only by regulators (FTC/CFPB/AGs). They are included to show Defendants' pattern of statutory disregard, but Plaintiff does not rely on them as independent causes of action.

1.      § 1681s-2(a)(1)(A) – Furnishing information with actual knowledge of errors.

2.      § 1681s-2(a)(1)(B) – Continuing to furnish inaccurate data after notice.

3.      § 1681s-2(a)(3) – Failure to report tradeline as disputed.

4.      § 1681s-2(a)(5) – Failure to update/correct ownership information.

5.      § 1681s-2(a)(8)(E) – Failure to respond to a direct dispute within 30 days.

6.      § 1681s-2(a)(1)(A) – Furnishing information without lawful ownership/authority.

7.      § 1681s-2(a)(5) – Failure to correct tradeline to identify true owner/furnisher.

8.      § 1681s-2(a)(1)(B) – Furnishing data despite lacking ownership documentation.

9.      § 1681s-2(a)(1)(B) – Continuing to furnish after learning furnishing may be unauthorized.

## III. Federal Violations – FCRA: Reinforcement of Enforceable Duties

*(All subsections below are actionable because they link back to § 1681s-2(b) duties.)*

1.      § 1681s-2(b)(1)(A) – Failure to stop inaccurate furnishing after actual knowledge from dispute.

2.      § 1681s-2(b)(1)(C) – Failure to correct tradeline after ratifying unauthorized furnishing.

3.      § 1681s-2(b)(1)(D) – Failure to delete tradeline when unable to verify ownership.

4.      § 1681e(b) – Allowing inaccurate ownership data to remain in consumer file.

5.      § 1681i(a)(1)(A) – Continued reporting of tradeline with no established ownership.

## IV. State Violations – New York General Business Law § 349

1.      GBL § 349(a) – Deceptive act: misrepresenting a business-purpose loan as a personal consumer debt.

2.      GBL § 349(a) – Deceptive act: claiming ownership/furnishing authority without proof of assignment or chain of title.

3

**V. City Violations – NYC Admin Code § 20-490 et seq.**

1.      **§ 20-490** – Engaging in debt collection/furnishing without a valid NYC license for the entity actively collecting.

2.      **§ 20-493.1** – Misrepresenting the character, amount, or legal status of the debt.

3.      **§ 20-494** – Failure to maintain records substantiating the debt, including chain of title and authority to furnish.

# Exhibit V

## Damages Summary Matrix

**Case No. 1:25-cv-04850 (NRM)(CHK)**

**Document Description**

This exhibit provides a detailed damages matrix summarizing the financial harm, enforceable statutory violations, and resulting impacts caused by the unlawful reporting and misclassification of Plaintiff's business-purpose loan as a personal consumer debt.

**Damages Categories**

1. **Statutory Violations** – Multiple violations of the FCRA (15 U.S.C. §§ 1681s-2(b), 1681e(b), 1681i, 1681g, 1681n, 1681o), New York General Business Law § 349, and NYC Admin Code § 20-490 et seq.

   o Includes failures to investigate, inaccurate furnishing, reinvestigation deficiencies, and licensing violations.

   o **Estimated Value: $18,000** (conservatively calculated; actual statutory recovery could be higher).

2. **Business Losses** – 12-month delay in launching the Ignite product line, directly caused by the misclassified tradeline and resulting loss of startup funding and revenue.

   **Estimated Value: $25,000.**

3. **Time & Expenses** – Costs for certified mail, legal research, documentation, and administrative tasks related to correcting the reporting error.

   o **Estimated Value: $2,500.**

4. **Reputational & Emotional Harm** – Loss of credibility with lenders, heightened stress, and reputational injury caused by misclassification of commercial debt as personal.

   o **Estimated Value: $4,500.**

**Total Claimed Damages**

**$50,000**

**Purpose of Exhibit V**

To demonstrate Plaintiff's quantifiable financial harm and statutory entitlement to damages, supporting the requested relief of $50,000 in the Civil Court Verified Complaint.

1

## Exhibit V – Damages Summary Matrix

**Defendants:** Spring Oaks Capital, LLC & Spring Oaks Capital SPV, LLC

**Case No.** 1:25-cv-04850 (NRM)(CHK)

### Overview

This exhibit summarizes the financial harm and statutory damages resulting from Defendants' unlawful reporting and misclassification of a business-purpose loan as a personal consumer debt. The damages claimed are based on **enforceable federal FCRA provisions, New York General Business Law § 349, and NYC Administrative Code § 20-490 et seq.** Each category is supported by documentary evidence and cross-referenced exhibits.

### Category 1 – Statutory Violations

**Description:** Defendants committed numerous statutory violations by:

- Failing to investigate and correct disputes in violation of **FCRA § 1681s-2(b)(1)(A)–(E)**.

- Furnishing inaccurate and unverifiable information in violation of **FCRA §§ 1681e(b), 1681i(a)(1)(A), 1681i(a)(6)(B)(iii), and 1681g(a)**.

- Engaging in deceptive acts in violation of **New York General Business Law § 349(a)**.

- Operating and furnishing without proper licensure in violation of **NYC Admin. Code §§ 20-490, 20-493.1, and 20-494**.

**Estimated Value:** For purposes of this claim, statutory damages are valued at **$18,000** (conservatively allocated at approximately $1,000 per willful violation and $100–$500 for negligent noncompliance). Actual statutory exposure could be substantially higher.

### Category 2 – Business Losses

**Description:** Plaintiff suffered concrete business harm as a result of Defendants' misreporting:

- 12-month delay in launching the Ignite product line, directly tied to Defendants' misclassification of a commercial loan as a personal tradeline, which prevented access to startup funding and revenue.

**Estimated Value:** $25,000.

2

**Category 3 – Time & Expenses**

**Description:** Direct costs incurred by Plaintiff in attempting to correct Defendants' unlawful reporting, including:

•        Certified mail and postage fees.

•        Legal research and documentation.

•        Administrative expenses related to disputes and CFPB/AG filings.

**Estimated Value: $2,500**


**Category 4 – Reputational & Emotional Harm**

**Description:**

•        Loss of credibility with lenders due to a false derogatory tradeline on Plaintiff's personal credit.

•        Heightened stress and reputational injury stemming from the misreporting of a business obligation as a personal consumer debt.

•        These harms support punitive damages under **FCRA § 1681n(a)(2)** for willful noncompliance.

**Estimated Value: $4,500**

3