*** Filed ***
07:33 PM, 05 Feb. 2026
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EHAB HASSAN,
   Plaintiff,

v.

SPRING OAKS CAPITAL, LLC and
SPRING OAKS CAPITAL SPV, LLC,
   Defendants.

**Case No.** 1:25-cv-04850-NRM-CHK

**PLAINTIFF'S LETTER MOTION FOR INFORMAL DISCOVERY CONFERENCE**

**Honorable Clay H. Kaminsky**
United States Magistrate Judge
Eastern District of New York

Dear Judge Kaminsky:

**Plaintiff respectfully submits this corrected letter to address a clerical caption error in the previously filed Letter Motion for Informal Discovery. The prior letter inadvertently referenced an incorrect defendant name and case number in the caption only. The body of the submission and the relief requested pertain solely to this action. No substantive changes are made.**

Plaintiff respectfully submits this letter motion pursuant to the Court's discovery procedures and Federal Rule of Civil Procedure 37(a)(1), requesting an informal discovery conference regarding unresolved discovery disputes. Plaintiff has made good-faith efforts to confer and narrow the issues without Court intervention, but the parties remain at an impasse.

**I. Nature of the Discovery Dispute**

The dispute concerns Defendants' responses and objections to Plaintiff's Requests for Production ("RFPs") and Requests for Admission ("RFAs"). After reviewing Defendants' written responses, Plaintiff narrowed the dispute to the following requests:

- **Requests for Production (Set I):** RFP Nos. 1–7

- **Requests for Production (Set II):** RFP Nos. 9, 11, and 14

- **Requests for Admission:** RFAs Nos. 1–5, 7, 8, 13, 16, 24, and 25; and RFAs Nos. 6, 8, 10–13, 17–18, 21, and 23

With respect to the **Requests for Production**, Plaintiff raised specific deficiencies and requested that Defendants either (1) identify responsive documents by Bates number, or (2) state that no such documents exist. In response, Defendants did not address the RFPs at issue and did not identify any responsive documents or confirm non-existence. Instead, Defendants cited previously produced materials that do not authorize, evidence, or reflect the matters requested.

The documents Defendants referenced—such as Plaintiff's dispute correspondence, credit-bureau dispute screenshots, generic privacy notices, and the original loan agreement with First Electronic Bank—do not include payment records, account-level transfer schedules, internal transfer documentation, consideration, or proof of notice or delivery responsive to the Requests for Production. The citation of such materials does not cure the deficiencies identified under Rule 34.

With respect to the **Requests for Admission**, Plaintiff disputed Defendants' responses on procedural grounds under Federal Rule of Civil Procedure 36. Plaintiff requested targeted amendments to certain RFAs served on January 22, 2026. Defendants have not stated their position regarding those amendment requests and declined to amend their responses. Defendants asserted objections based on "vague and ambiguous" while simultaneously quoting or relying on the same loan documents identified by Bates number, and served denials that do not fairly respond to the substance of the requests or state an inability to admit or deny after reasonable inquiry, as required by Rule 36(a)(4). Plaintiff further requested that Defendants identify any documents supporting denials concerning ownership, authority, servicing, or furnishing, or confirm that no such documents exist. Defendants declined to clarify or amend their responses.

Defendants' written reply instead **included merits commentary and statements unrelated to compliance with Rules 34 and 36**, leaving the discovery deficiencies **unresolved.**

## II. Meet-and-Confer Efforts

Consistent with Rule 37(a)(1) and the Court's procedures, Plaintiff engaged in a **good-faith** meet-and-confer by **written** correspondence. Plaintiff identified **specific** RFP and RFA deficiencies, proposed a rule-compliant method to **narrow** the dispute, requested clarification in writing, and **offered to confer by telephone or videoconference** once Defendants clarified their position so that any conference would be **meaningful**.

Defendants responded in writing but **declined** to supplement their responses, identify responsive documents by Bates number, state that responsive documents do not exist, or amend their Requests for Admission responses. Defendants instead asserted that their responses complied with the Rules and raised merits arguments **unrelated to the discovery deficiencies**. Although defense counsel offered to confer by telephone, and Plaintiff indicated

he would welcome such a call after Defendants clarified their position, Defendants **declined to clarify** their position in writing or narrow the issues, which would have made any telephone conference **lengthy and unproductive** to resolve ten Requests for Production and fifteen Requests for Admission, and **prevented** the parties from **meaningfully narrowing the dispute.**

Plaintiff also requested Defendants' participation in a joint discovery letter. Defendants **did not agree to submit a joint letter**. Plaintiff therefore submits this request unilaterally.

Copies of the relevant meet-and-confer correspondence are attached as **Exhibit A**. Defendants' written discovery responses are attached as **Exhibit B**, and Plaintiff's annotated Requests for Production and Responses are attached as **Exhibit C**.

**III. Requested Relief**

Plaintiff respectfully requests that the Court schedule an informal discovery conference to address:

1.  Whether Defendants **must** identify or produce documents responsive to the disputed Requests for Production, or alternatively provide a sworn statement that no responsive documents exist; and

2.  Whether Defendants **must** state their position regarding Plaintiff's requested amendments to the disputed Requests for Admission and serve responses compliant with Rule 36.

Plaintiff seeks **only compliance** with Defendants' discovery obligations—identification, production, or confirmation of non-existence of responsive documents—and the **Court's assistance** in clarifying Defendants' narrowed discovery obligations. Plaintiff **does not** seek sanctions or merits relief **at this time**.

Respectfully submitted,

**/s/ Ehab Hassan**

Ehab Hassan
Plaintiff, Pro Se

cc: Counsel for Defendants (via ECF)

# Exhibit A

Meet-and-Confer Correspondence

**This page intentionally left blank.**

# Meet-and-Confer Correspondence

(Request for Amended Requests for Admission)

**This page intentionally left blank.**

2/3/26, 2:0... DEMO Carlos Mai - Re: Hassan v. Spring Oaks Capital, LLC, et al. - Responses to Requests for Documents Set I

Case 1:25-cv-04850-NRM-CLK    Document 39    Filed 02/05/26    Page 6 of 72 PageID #: 478

## Re: Hassan v. Spring Oaks Capital, LLC, et al. - Responses to Requests for Documents Set I

From:  Ehab Hassan (ehabehassan@yahoo.com)

To:     benjamin.kirk@rossmankirk.com

Cc:     dschilling@kbrlaw.com; john.rossman@rossmankirk.com; steve.hedding@rossmankirk.com

Date:   Friday, January 23, 2026 at 01:15 PM EST

---

Mr. Kirk,

Thank you for your message.

To make any discussion productive, could you please provide Defendants' position in writing regarding the proposed RFA amendments (including whether Defendants object, agree, or propose alternative language)? Once I've had an opportunity to review your written response, I'm happy to schedule a call if it would be helpful.

Regards,
Ehab Hassan


On Friday, January 23, 2026 at 11:03:52 AM EST, Benjamin J. Kirk <benjamin.kirk@rossmankirk.com> wrote:


Mr. Hassan,


I am available to discuss this on Tuesday, January 27th after 10am ET.  Please let me know a time that works for you.


Thank you,


Benjamin J. Kirk

Attorney at Law

(612) 225-4176



https://www.rossmankirk.com

**From:** Ehab Hassan <ehabehassan@yahoo.com>
**Sent:** Thursday, January 22, 2026 5:51 PM
**To:** Benjamin J. Kirk <benjamin.kirk@rossmankirk.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>; Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** Re: Hassan v. Spring Oaks Capital, LLC, et al. - Responses to Requests for Documents Set I

**Counsel:**

Plaintiff writes to **conduct a meet-and-confer via this correspondence** in good faith regarding Defendants' Responses and Objections to Plaintiff's First Requests for Admission, served January 22, 2026, pursuant to Fed. R. Civ. P. 36 and the Eastern District of New York's discovery practices.

Plaintiff is available to discuss these issues by telephone should Defendants believe a call is necessary to assist in resolving the matters identified below.

After reviewing Defendants' responses, Plaintiff respectfully requests that Defendants amend certain answers to comply with Rule 36(a)(4), which requires that each request be answered fully, fairly, and without evasion. The issues identified below are narrow, procedural and are raised for the purpose of resolving this dispute without court intervention.

### I. Objections Based on "Vague and Ambiguous" Where Defendants Quote or Rely on the Same Documents

Defendants repeatedly object on the ground that requests are "vague and ambiguous" or that Defendants "do not understand the Request," while simultaneously quoting, citing, or relying on the very same loan documents produced to the CFPB and identified by Bates number (e.g., SOC_HASSAN 000049–000061).

This objection is asserted in response to, among others, RFAs **1–5, 7, 8, 13, 16, 24, and 25**.

Where a responding party demonstrates understanding of a document by quoting or relying on it, Rule 36 does not permit continued reliance on a vagueness objection to avoid a substantive admission or denial. Plaintiff therefore requests that Defendants **withdraw the vagueness objections** to these RFAs and serve amended responses stating a clear **Admit or Deny** as required by Rule 36(a)(4).

### II. Denials That Do Not Fairly Respond to the Substance of the Requests

Several RFAs are denied on the stated basis that Defendants "do not understand" concepts such as "reclassification" or "furnishing as consumer credit," without stating whether the denial is based on contrary facts, possession of supporting documents, or lack of information after reasonable inquiry.

This issue affects, among others, RFAs **6, 8, 10–13, 17–18, 21, and 23**.

2/3/26, 2:00 PM     Carlos Mall - Re: Hassan v. Spring Oaks Capital, LLC, et al. Responses to Request for Documents Set
Case 1:25-cv-04850-NRM-CLK    Document 39    Filed 02/05/26    Page 8 of 72 PageID #:
480

Rule 36(a)(4) requires that a denial "fairly respond to the substance of the matter" and, where applicable, that the responding party state that it lacks information after reasonable inquiry. Plaintiff requests that Defendants **amend these responses** to clarify whether each denial is based on:

1. The existence of a contrary document or fact; or
2. An asserted inability to admit or deny after reasonable inquiry, stated expressly and in compliance with Rule 36.

### III. Identification of Documents Supporting Denials

Where Defendants deny RFAs concerning ownership, authority, servicing, or furnishing—particularly RFAs **6, 16, 17–18, 19, 21, 23–25**—Plaintiff requests that Defendants identify, by Bates number, any document on which such denial is based, or confirm that no such document exists.

This request is not intended to expand discovery, but to ensure that denials are made in good faith and are supported as required by Rule 36.

### IV. Requested Resolution and Deadline

Plaintiff respectfully requests that Defendants serve **amended, Rule-36-compliant responses** addressing the issues above no later than **January 29, 2026**.

If Defendants do not intend to amend their responses, please confirm that position in writing by the same date so that Plaintiff may seek appropriate relief under Rule 36(a)(6) without further correspondence.

Plaintiff remains willing to meet and confer further if Defendants believe any issue identified above can be resolved informally.

Please see the attached PDF titled "RFA Clarification Chart (Meet-and-Confer)," which identifies each RFA, Defendants' verbatim response, the procedural defect, and the requested amendment.

Respectfully,

Ehab Hassan
Plaintiff, Pro Se
Telephone: (347) 216-3585

On Thursday, January 22, 2026 at 04:26:07 PM EST, Benjamin J. Kirk <benjamin.kirk@rossmankirk.com> wrote:

Mr. Hassan,

Attached and served upon you please find responses to your Requests for Admission.


Thank you,


Benjamin J. Kirk

Attorney at Law

(612) 225-4176

**RK**

**ROSSMAN KIRK, PLLC**

https://www.rossmankirk.com


---

**From:** Benjamin J. Kirk
**Sent:** Tuesday, January 20, 2026 5:31 PM
**To:** 'Ehab Hassan' <ehabehassan@yahoo.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>;
Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** RE: Hassan v. Spring Oaks Capital, LLC, et al. - Responses to Requests for Documents Set I


Mr. Hassan,


The link is below.  Please let me know if you have any trouble accessing the documents.


◻Ehab Hassan


Please note that my client is working to produce Metro 2 data you requested in Set II of your RFPDs, but we don't anticipate that data will be ready until February 6th.


Thank you,

Benjamin J. Kirk

Attorney at Law

(612) 225-4176



https://www.rossmankirk.com

---

**From:** Ehab Hassan <ehabehassan@yahoo.com>
**Sent:** Tuesday, January 20, 2026 2:42 PM
**To:** Benjamin J. Kirk <benjamin.kirk@rossmankirk.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>; Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** Re: Hassan v. Spring Oaks Capital, LLC, et al. - Responses to Requests for Documents Set I

Mr. Kirk,

Yes, you may provide the documents to me via email.

Given the nature of the production, please ensure that all documents responsive to my Requests for Production (Set I) are included in full, in their native format where applicable, and without alteration.

This confirmation is solely for purposes of delivery and does not waive any rights to object to the adequacy, completeness, timeliness, or responsiveness of the production.

Thank you.
Ehab Hassan

On Tuesday, January 20, 2026 at 03:17:21 PM EST, Benjamin J. Kirk <benjamin.kirk@rossmankirk.com> wrote:

Mr. Hassan,

2/3/26, 2:03 PM                    Yahoo Mail - Kirk - Hassain v. Spring Oaks Capital LLC et al. - Responses to Requests for Documents Set I

Case 1:25-cv-04850-NRM-CLH   Document 30   Filed 02/05/26   Page 11 of 72 PageID #:
483

Please see the attached responses to your Requests for the Production of Documents (Set I).


The document production requires us to share a link to download the documents.  Given the sensitive nature of
the documents (which contain your personal information), can you please confirm that I can provide these
documents to you via email?


Thank you,


Benjamin J. Kirk

Attorney at Law

(612) 225-4176



https://www.rossmankirk.com

# Meet-and-Confer Correspondence

(Narrowed Requests for Production and Requests for Admission)

**This page intentionally left blank.**

## RE: Meet-and-Confer re Outstanding Discovery Responses (RFPs & RFAs)

From: Benjamin J. Kirk (benjamin.kirk@rossmankirk.com)

To: ehabehassan@yahoo.com

Cc: dschilling@kbrlaw.com; john.rossman@rossmankirk.com; bbreeland@kbrlaw.com; steve.hedding@rossmankirk.com

Date: Wednesday, February 4, 2026 at 12:59 PM EST

Thank you Mr. Hassan,

I have repeatedly stated that I am available to meet and confer as required by Rule 37, but you have declined to engage, insisting instead that my client provide further unnecessary written responses to your objections <u>before</u> we attempt to discuss your concerns. Although it is not the proper procedure, I provide the following response in an effort to avoid wasting the parties' and the court's time and resources on a discovery dispute at this stage.

As an unrepresented party, we urge you to consult with your own attorney to answer your legal questions. Our law firm cannot provide you with legal advice for your case because we do not represent you—we represent the Defendant.

You admit that you owe the debt in question, but you claim that somehow the debt should not have been reported on your credit bureau. You produce no statute or case law to support your meritless claim that this debt should not have reported on your credit bureau. Further, the loan agreement that you admit you signed to originate this debt (produced in our client's document responses as Hassan_000052) provides as follows:

This document alone defeats all of the claims in your lawsuit. Please explain in detail why you are continuing to litigate this case after you have examined this document where you agreed to "irrevocably

consent" for this account to be reported to the credit bureaus? If you cannot provide such an explanation, you should dismiss this case.

While we understand that you dislike the law and the plain language of the documents that you admit you signed, you do not deny that this debt is yours and that it was lawfully reported on your credit bureau report. No amount of manufactured discovery disputes or claims will change the fundamental flaw with your claims and the documents you signed. We plan on filing a motion to dismiss your meritless claims.

Below are our responses to your questions below in <u>green</u>:

**I. Objections Based on "Vague and Ambiguous" Where Defendants Quote or Rely on the Same Documents** Defendants repeatedly object on the ground that requests are "vague and ambiguous" or that Defendants "do not understand the Request," while simultaneously quoting, citing, or relying on the very same loan documents produced to the CFPB and identified by Bates number (e.g., SOC_HASSAN 000049–000061).

This objection is asserted in response to, among others, RFAs **1–5, 7, 8, 13, 16, 24, and 25**.

Where a responding party demonstrates understanding of a document by quoting or relying on it, Rule 36 does not permit continued reliance on a vagueness objection to avoid a substantive admission or denial. Plaintiff therefore requests that Defendants **withdraw the vagueness objections** to these RFAs and serve amended responses stating a clear **Admit or Deny** as required by Rule 36(a)(4).

<u>Response:</u> We have reviewed these RFA objections and responses and confirm that they fully comply with the Rules. Typically a party would attach the exact documents about which a Request for Admission is propounded to avoid these objections rather than describing the documents in an RFA with improper run-on sentences and improper compound statements that reference other documents. Further please note that RFA Response 3 references documents SOC_HASSAN 000049–000061 produced in response to the Request for Production of Documents, which likely encompasses all of the documents you reference, thus making this objection by Plaintiff moot. These documents include this disclosure in your agreement which defeats your case:

Response: We remain open to a meet and confer as required by Rule 37.

## II. Denials That Do Not Fairly Respond to the Substance of the Requests

Several RFAs are denied on the stated basis that Defendants "do not understand" concepts such as "reclassification" or "furnishing as consumer credit," without stating whether the denial is based on contrary facts, possession of supporting documents, or lack of information after reasonable inquiry.

This issue affects, among others, RFAs **6, 8, 10–13, 17–18, 21, and 23**.

Rule 36(a)(4) requires that a denial "fairly respond to the substance of the matter" and, where applicable, that the responding party state that it lacks information after reasonable inquiry. Plaintiff requests that Defendants **amend these responses** to clarify whether each denial is based on:

1. The existence of a contrary document or fact; or
2. An asserted inability to admit or deny after reasonable inquiry, stated expressly and in compliance with Rule 36.

Response: We have reviewed these RFA objections and responses and confirm that they comply with the Rules. Perhaps for clarity here, Plaintiff could provide definitions of key terms in your Requests for Admission to avoid these objections in the future. Additionally, perhaps less complicated RFAs that omit improper run-on sentences and do not include improper compound statements would avoid objections. For instance, our client does not deny that it lawfully reported your account to the credit bureaus and our client produced numerous documents (at Hassan_0000138 to Hassan_0000168) detailing this credit reporting. Our client continues to deny all of the other allegations you make in these requests. We remain open to a meet and confer as required by Rule 37.

## III. Identification of Documents Supporting Denials

Where Defendants deny RFAs concerning ownership, authority, servicing, or furnishing—particularly RFAs **6, 16, 17–18, 19, 21, 23–25**—Plaintiff requests that Defendants identify, by Bates number, any document on which such denial is based, or confirm that no such document exists.

This request is not intended to expand discovery, but to ensure that denials are made in good faith and are supported as required by Rule 36.

Response: It is unclear if this is a separate or new discovery request. Please advise during our Rule 37 conference.

**IV. Requested Resolution and Deadline**
Plaintiff respectfully requests that Defendants serve **amended, Rule-36-compliant responses** addressing the issues above no later than **January 29, 2026**.

If Defendants do not intend to amend their responses, please confirm that position in writing by the same date so that Plaintiff may seek appropriate relief under Rule 36(a)(6) without further correspondence.

Response: We urge you to comply with Rule 37 before sending a letter to the judge, which is completely improper at this time based on your failure to meet and confer under the rules.  If you file a letter or other communication with the Court as you have stated you will without a meet and confer, I request that you include all of the information contained herein in that communication.

Thank you,

Benjamin J. Kirk
Attorney at Law
(612) 225-4176

https://www.rossmankirk.com

---

**From:** Ehab Hassan <ehabehassan@yahoo.com>
**Sent:** Tuesday, February 3, 2026 12:52 PM
**To:** Benjamin J. Kirk <benjamin.kirk@rossmankirk.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>; Brennan P. Breeland <bbreeland@kbrlaw.com>; Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** Re: Meet-and-Confer re Outstanding Discovery Responses (RFPs & RFAs)

Mr. Kirk,

Attached is Plaintiff's proposed letter motion requesting an informal discovery conference pursuant to Magistrate Judge Kaminsky's procedures.

Plaintiff remains willing to submit a joint letter if Defendants are willing to participate. If Defendants do not agree to proceed jointly, or do not provide proposed revisions by **Feb. 4, 2026 at 5:00 PM ET,**, Plaintiff will file the letter unilaterally, noting that a joint submission was not practicable.

Regards,
Ehab Hassan
Plaintiff, Pro Se

On Tuesday, February 3, 2026 at 01:02:55 PM EST, Benjamin J. Kirk <benjamin.kirk@rossmankirk.com> wrote:

Mr. Hassan,

There is no requirement for my client to respond to your objections in writing.  In my experience and understanding of the rules, the meet and confer requirement is interpreted to refer to telephone calls or in-person meetings.  The guide for any such discussion could be your written objections, and I think that is sufficient for us to attempt to have a productive conversation.  I am not aware of any basis for you to require a written response as precondition to meeting and conferring about your discovery objections.  Again, I remain open to a phone call to discuss your concerns, but I do not intend to provide a written response in advance of that meeting for the reasons I have stated below.

Thank you,

Benjamin J. Kirk

Attorney at Law

(612) 225-4176

https://www.rossmankirk.com

**From:** Ehab Hassan <ehabehassan@yahoo.com>
**Sent:** Tuesday, February 3, 2026 11:24 AM
**To:** Benjamin J. Kirk <benjamin.kirk@rossmankirk.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>;
Brennan P. Breeland <bbreeland@kbrlaw.com>; Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** Re: Meet-and-Confer re Outstanding Discovery Responses (RFPs & RFAs)


Mr. Kirk,

Thank you for your message.

To be clear, I have not declined to meet and confer. I have requested that Defendants first state their position in
writing so that any conference is meaningful and consistent with Magistrate Judge Kaminsky's discovery procedures.

As set forth in my prior email, the issues concern whether Defendants contend that (1) responsive documents exist
and will be produced, (2) no such documents exist and Defendants will provide a sworn statement to that effect, and
(3) whether Defendants will amend their responses and/or admissions, including the RFAs for which amendments
were requested on January 22 and for which no position has yet been stated.

Without clarification of Defendants' position on those points, a conference would necessarily proceed without a
defined scope and would not meaningfully narrow the disputes. That is the reason I requested a written position in
advance, not to avoid conferral.

Once Defendants' position is stated in writing, I am fully available to confer by phone or videoconference and will
make myself available promptly.

If Defendants prefer not to state their position in writing and instead wish to proceed directly to a conference, I will
treat that as an impasse for purposes of seeking discovery intervention under Magistrate Judge Kaminsky's
procedures, consistent with my prior email.

Please let me know how Defendants wish to proceed.

Regards,
Ehab Hassan
Plaintiff, Pro Se



On Tuesday, February 3, 2026 at 12:11:19 PM EST, Benjamin J. Kirk <benjamin.kirk@rossmankirk.com> wrote:

Mr. Hassan,

I previously offered to meet and confer in response to your initial demand, and you declined.  The rules do not require that I provide a written response or position to you in advance of meeting to confer about your objections.  Generally speaking, my client took great care in preparing its discovery responses and stands by them.  I am happy to discuss your concerns and see if we can resolve our disagreement.  If, after that discussion, I believe a written response or amendments are warranted, I will discuss them with my client and consider a response.

I have availability tomorrow morning (2/4) and Thursday morning (2/5) after 10am ET to discuss if you would like to meet and confer.

Thank you,

Benjamin J. Kirk

Attorney at Law

(612) 225-4176

https://www.rossmankirk.com

---

**From:** Ehab Hassan <ehabehassan@yahoo.com>
**Sent:** Monday, February 2, 2026 8:38 PM
**To:** Benjamin J. Kirk <benjamin.kirk@rossmankirk.com>
**Cc:** Daniel Schilling <dschilling@kbrlaw.com>; John K. Rossman <john.rossman@rossmankirk.com>; Brennan P. Breeland <bbreeland@kbrlaw.com>; Steve D. Hedding <steve.hedding@rossmankirk.com>
**Subject:** Meet-and-Confer re Outstanding Discovery Responses (RFPs & RFAs)

Counsel,

Pursuant to Magistrate Judge Clay H. Kaminsky's discovery procedures, I am writing to initiate a good-faith meet-and-confer regarding Defendants' discovery responses, which remain unresolved.

**FIRST — Requests for Production (RFPs)**

The following **narrowed** Requests for Production remain outstanding due to non-responsive production:

Requests for Production (Set I): RFP Nos. 1–7
Requests for Production (Set II): RFP Nos. 9, 11, and 14

For clarity, the documents cited in Defendants' responses are not responsive to the documents requested in Plaintiff's RFPs.

By way of example, RFP No. 9 sought documents authorizing any seller or assignor to execute a transfer of Plaintiff's account. Defendants cite SOC_HASSAN 000052, a page of the promissory note. A promissory note is not a power of attorney, agency agreement, or delegation of authority. It does not authorize assignment, does not identify a transferor or transferee, and does not grant authority to convey Plaintiff's account.

To narrow the issues and facilitate resolution, please state Defendants' final position in writing as to each of the above RFPs by confirming one of the following:

Defendants will produce responsive documents within fourteen (14) days; or
Defendants will provide a sworn statement that responsive documents do not exist and are not in Defendants' possession, custody, or control.

**SECOND — Requests for Admission (RFAs)**

Plaintiff requested amendments to certain Requests for Admission on January 22. To date, Plaintiff has not received Defendants' stated position regarding the requested amendments.

Please advise whether Defendants will amend their responses and/or admissions within fourteen (14) days.

Once Defendants' position is stated in writing, I am fully available to confer by phone or videoconference regarding any remaining issues.

If Defendants decline to state their position in writing within three (3) days, or insist on a phone conference without first clarifying their position as outlined above, I will treat that as an impasse for purposes of Magistrate Judge Kaminsky's discovery procedures.

In that event, I will prepare a proposed joint request for discovery intervention and circulate it for Defendants' input. If Defendants elect not to participate in the filing of a joint submission within seven (7) days, I will proceed with a unilateral request noting Defendants' position.

I look forward to resolving these issues without the need for court involvement.

Best regards,
Ehab Hassan
Plaintiff, Pro Se

# Exhibit B

Defendants' RFP and RFA Responses

**This page intentionally left blank.**

# Defendants' RFA Responses

**This page intentionally left blank.**

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

EHAB HASSAN,
an individual,

      Case No.: 1:25-cv-04850-NRM-CHK

      Plaintiff,

v.

      **DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

SPRING OAKS CAPITAL, LLC and
SPRING OAKS CAPITAL SPV, LLC,

      Defendants.

Defendants, Spring Oaks Capital, LLC ("Spring Oaks LLC") and Spring Oaks Capital SPV, LLC ("Spring Oaks SPV") (together, "Defendants" or "Spring Oaks") provide the following objections and responses to Plaintiff's Requests for Admission.

### PRELIMINARY STATEMENT

1.    These answers are based upon information presently known by Spring Oaks. It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions. Spring Oaks reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these answers as warranted thereby. These answers are made in a good faith effort to supply as much information and specification as presently known.

2.    Each answer herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

1

3. The absence of an objection that a request is irrelevant is not intended to be a waiver of that objection and Spring Oaks reserves the right to object on relevancy grounds at any state of these proceedings.

4. To the extent any request or any part thereof is intended to elicit information protected from discovery by the attorney-client privilege or the attorney work product doctrine, Spring Oaks objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

5. Referencing and expressly incorporating each of these general objections, Spring Oaks hereby responds herein:

### RESPONSES TO REQUESTS FOR ADMISSIONS

1. Admit that Paragraph 8 ("CONSENT TO ELECTRONIC COMMUNICATIONS") of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, is titled "Business Loan Agreement."

**RESPONSE:  Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Defendants do not understand the Request. Subject to and without waiving the stated objection(s), Defendants deny.**

2. Admit that, in the "Promissory Note and Disclosures" page of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, the agreement states:
"You agree that you will not use the loan proceeds for personal, family, household, or consumer purposes."

**RESPONSE:  Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Subject to and without waiving the stated objection(s), Defendants admit that the original loan documents associated with the loan issued by LendingPoint LLC to Plaintiff (a copy of which is produced herewith, see SOC_HASSAN 000049–000061) include the text "You agree that you will not use the loan proceeds for personal, family, household, or consumer purposes."**

3. Admit that Paragraph 3 ("Promise to Pay") of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, states that Plaintiff promised to use the loan proceeds for business purposes and not for personal, family, or household purposes.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Subject to and without waiving the stated objection(s), Defendants admit that the original loan documents associated with the loan issued by LendingPoint LLC to Plaintiff (a copy of which is produced herewith, see SOC_HASSAN 000049–000061) include the following text:**

3. **PROMISE TO PAY.** For value received, you promise to pay to us, including any assignee of this Agreement, the Amount Due reflected in the Credit Cost Disclosures above (which consists of the Disbursed Loan Amount plus the One Fixed Finance Charge), and charges as set forth below, by making installment payments as described in the Payment Schedule set forth in the Credit Cost Disclosures above. You may authorize automatic electronic payments via ACH or debit card using the Authorization for Automatic Payments below, or you may pay by authorizing a one-time electronic payment for the first scheduled payment and delivering checks for each additional payment on or before each scheduled due date. (California and Wisconsin residents have the option of making all scheduled payments by check.) **You promise and represent that you will use the proceeds of the loan for business purposes and not for personal, family, or household purposes or any illegal purposes.**

4. Admit that Paragraph 8 ("ASSIGNMENT") of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, states that, for purposes of the Uniform Commercial Code and applicable law, the agreement is deemed commercial paper.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Subject to and without waiving the stated objection(s), Defendants admit that the original loan documents associated with the loan issued by LendingPoint LLC to Plaintiff (a copy of which is produced herewith, see SOC_HASSAN 000049–000061) include the following text:**

8.   **ASSIGNMENT.**  You may not assign or transfer your rights or obligations under this Agreement without our prior written consent.  This Agreement may be assigned or sold by Bank to another party (the "Assignee").  Assignee shall be entitled to all of the Bank's rights under this Agreement. For purposes of the Uniform Commercial Code and applicable law, this Agreement shall be deemed "commercial paper." Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

5.  Admit that Paragraph 17 ("State Law Notices") of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, states that the lender is not altering the nature of the loan or suggesting that the loan is primarily for non-business or non-commercial purposes.

**RESPONSE:   Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Subject to and without waiving the stated objection(s), Defendants admit that the original loan documents associated with the loan issued by LendingPoint LLC to Plaintiff (a copy of which is produced herewith, see SOC_HASSAN 000049–000061) include the following text:**

17.   **STATE LAW NOTICES. By providing the following notices, Lender is in no way altering the nature of the loan or suggesting that the loan is primarily for other than business or commercial purposes.  While many of these notices are required for consumer purpose transactions, Lender believes they include information that is also informative in the context of transactions that are for business or commercial purposes, such as the loan evidenced by this Agreement.**

6.  Admit that the Sale Agreement dated September 27, 2023, which Defendants referenced in the December 20, 2023 Bill of Sale produced to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and in Defendants' written response dated June 29, 2025, did not result in the transfer of ownership of Plaintiff's alleged debt on September 27, 2023.

4

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Defendants do not understand the Request. Subject to the stated objection(s), Defendants deny.**

7.  Admit that Paragraph 19 ("USA PATRIOT Act Information Disclosure") of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, states that loan proceeds will be used only for business purposes and not for personal, family, household, or consumer purposes.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Subject to and without waiving the stated objection(s), Defendants admit that the original loan documents associated with the loan issued by LendingPoint LLC to Plaintiff (a copy of which is produced herewith, see SOC_HASSAN 000049–000061) include the following text:**

**19.   USA PATRIOT ACT INFORMATION DISCLOSURE.** To help the government fight the funding of terrorism and money-laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  What this means to you:  When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you.  We may also ask to see your driver's license or other identifying documents.

Borrower has read and understood the above Agreement and agrees to the terms of this Agreement.  Borrower agrees that loan proceeds will be used only for business purposes and not for any personal, family, household, or consumer purpose.

8.  Admit that the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, as in effect on or before December 20, 2023, contains no provision expressly authorizing reclassification of the loan from a business-purpose loan to a consumer-purpose loan.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Defendants do not understand the Request's reference to "reclassification of the loan." Subject to and without waiving the stated objection(s), Defendants therefore deny.**

9. Admit that on or before December 20, 2023, Defendants do not possess any written amendment to the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, that authorizes reclassification of the loan's purpose from business to consumer.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Defendants do not understand the Request's reference to "reclassification of the loan's purpose from business to consumer." Subject to the stated objection(s), Defendants admit that Defendants do not possess an amendment to any agreement associated with LendingPoint's loan to Plaintiff that "authorizes reclassification of the loan's purpose from business to consumer."**

10. Admit that on or before December 20, 2023, Defendants do not possess any written approval or authorization executed by Plaintiff consenting to reclassification of the loan as consumer credit, with respect to the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025.

**RESPONSE: Objection. This request is vague and ambiguous. Defendants do not understand the Request's reference to "reclassification of the loan as consumer credit." Subject to the stated objection(s), Defendants therefore deny.**

11. Admit that Defendants furnished Plaintiff's loan to at least one consumer reporting agency as consumer credit, with respect to the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025.

**RESPONSE: Objection. This request is vague and ambiguous as to "furnished Plaintiff's loan to one or more consumer reporting agencies as consumer credit[.]" Defendants do not understand the Request's reference to furnishing data about a debt "as consumer credit" and therefore deny.**

12. Admit that Defendants furnished Plaintiff's loan to one or more consumer reporting agencies as consumer credit at a time when the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, designated the loan as business-purpose.

**RESPONSE: Objection. This request is vague and ambiguous as to "furnished Plaintiff's loan to one or more consumer reporting agencies as consumer credit[.]" Defendants**

**do not understand the Request's reference to furnishing data about a debt "as consumer credit" and therefore deny.**

13. Admit that the consent provisions of the loan agreement initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, contain no language expressly authorizing Defendants to reclassify the stated business purpose of the loan for consumer reporting purposes.

**RESPONSE:   Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided. Defendants do not understand the Request's reference to "consent provisions of the loan agreement" and do not understand the Request's reference to "reclassify the stated business purpose of the loan for consumer reporting purposes" and therefore deny.**

14. Admit that Defendants do not possess any document, record, or other evidence showing that the loan initiated by the loan originator Federal Electronic Bank, and produced by Defendants to the Consumer Financial Protection Bureau in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, was obtained or used for personal, family, or household purposes.

**RESPONSE:   Objection. This request is vague and ambiguous. Subject to the stated objection, Defendants admit that Defendants do not currently possess any document or other evidence showing that the loan was obtained or used for personal, family or household purposes; however, discovery is continuing.**

15. Produce all training manuals, compliance guides, presentations, instructional materials, or onboarding documents explaining how personnel determine whether a loan is consumer or business in nature, including all versions in effect at the time Plaintiff's Account was originated, serviced, transferred, furnished, or disputed, and identifying the audience or personnel to whom such training applied.

**RESPONSE: Objection. This Request is not a Request for Admission permissible under Fed. R. Civ. P. 36. Subject to the stated objection, and to the extent that this Request could be construed as a Request for Admission, Defendants deny.**

16. Admit that the Bill of Sale dated December 20, 2023, and any schedule, exhibit, or attachment thereto, which Defendants produced to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, do not identify Plaintiff's alleged obligation by borrower name, account number, loan number, balance amount, origination date, or payment history.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants. Subject to the stated objection(s), Defendants deny.**

17. Admit that you do not possess any servicing agreement, agency agreement, or power of attorney, executed on or before December 20, 2023, authorizing Spring Oaks Capital, LLC to collect on or furnish information about Plaintiff's alleged obligation on behalf of Spring Oaks Capital SPV, LLC.

**RESPONSE: Deny.**

18. Admit that on and after December 20, 2023, Spring Oaks Capital, LLC furnished, updated, and/or verified information concerning Plaintiff's Account to one or more consumer reporting agencies without possessing any written servicing agreement, power of attorney, or other written authorization that was executed and effective as of December 20, 2023, authorizing Spring Oaks Capital, LLC to do so on behalf of any other entity.

**RESPONSE: Objection. This request is vague and ambiguous. Subject to the stated objection, Defendants deny.**

19. Admit that Defendants provided the Consumer Financial Protection Bureau, as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, with an Assignment Agreement dated December 20, 2023, purporting to transfer Plaintiff's alleged debt from Spring Oaks Capital, LLC to Spring Oaks Capital SPV, LLC, and that the Assignment Agreement states a cut-off date of December 8, 2023.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants and is compound. Subject to the stated objection(s), Defendants admit they provided to the Consumer Financial Protection Bureau an Assignment Agreement dated December 20, 2023 which contains a provision entitled "Cutoff Date" and lists the date December 8, 2023.**

20. Admit that the Bill of Sale dated December 20, 2023, which Defendants produced to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, contains two separate signature blocks, each executed by LendingPoint—one purporting to be executed by LendingPoint on its own behalf and one purporting to be executed by LendingPoint on behalf of Coastal Community Bank.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants. Subject to the stated objection(s), Defendants admit.**

21. Admit that Spring Oaks Capital, LLC did not acquire ownership of Plaintiff's alleged debt on or before December 20, 2023.

**RESPONSE: Objection. This request is vague and ambiguous as to Spring Oaks Capital, LLC "acquir[ing] ownership" of Plaintiff's debt. Subject to the stated objection, Defendants deny.**

22. Admit that on December 20, 2023, Spring Oaks Capital, LLC executed a document purporting to assign Plaintiff's alleged debt to Spring Oaks Capital SPV, LLC, which Defendants produced to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants. Subject to the stated objection(s), Defendants admit.**

23. Admit that on December 20, 2023, Spring Oaks Capital, LLC furnished information concerning Plaintiff's alleged debt to at least one consumer reporting agency.

**RESPONSE: Deny.**

24. Admit that the Bill of Sale dated December 20, 2023, which Defendants produced to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, does not bear a signature on behalf of the buyer.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants. Subject to the stated objection(s), Defendants deny.**

25. Admit that the Schedule A produced by Defendants **in response to Consumer Financial Protection Bureau Complaint No. 250615-21561174 (filed June 15, 2025), and referenced in Defendants' written response dated June 29, 2025, was submitted by Defendants to the Consumer Financial Protection Bureau as proof of Defendants' claimed ownership of Plaintiff's alleged debt, and that the Schedule A identifies the account by a "Lot Number" that does not appear anywhere on the Bill of Sale dated December 20, 2023.

**RESPONSE: Objection. This request is vague and ambiguous and a copy of the document to which this Request pertains was not provided to Defendants, and is compound. Subject to the stated objection(s), Defendants deny.**

**ROSSMAN KIRK, PLLC**

By: */s/ Benjamin J. Kirk*                  

Dated:  January 22, 2026

Benjamin J. Kirk, 0393192
*Admitted Pro Hac Vice*
2626 E 82nd St., Suite 135
Bloomington, MN 55425
Telephone: 612-225-4176
benjamin.kirk@rossmankirk.com
*Attorneys for Plaintiffs*

# Defendants' RFP (SET I) Responses

**This page intentionally left blank.**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EHAB HASSAN,<br>an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SPRING OAKS CAPITAL, LLC and<br>SPRING OAKS CAPITAL SPV, LLC,<br><br>　　　　Defendants. | Case No.: 1:25-cv-04850-NRM-CHK<br><br><br>**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET I)** |

Defendants, Spring Oaks Capital, LLC ("Spring Oaks LLC") and Spring Oaks Capital SPV, LLC ("Spring Oaks SPV") (together, "Defendants" or "Spring Oaks") provide the following objections and responses to Plaintiff's Requests for the Production of Documents (Set I).

## PRELIMINARY STATEMENT

1.　　These answers are based upon information presently known by Spring Oaks. It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions. Spring Oaks reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these answers as warranted thereby. These answers are made in a good faith effort to supply as much information and specification as presently known.

2.　　Each answer herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

1

3.      The absence of an objection that a request is irrelevant is not intended to be a waiver of that objection and Spring Oaks reserves the right to object on relevancy grounds at any state of these proceedings.

4.      To the extent any request or any part thereof is intended to elicit information protected from discovery by the attorney-client privilege or the attorney work product doctrine, Spring Oaks objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

5.      Referencing and expressly incorporating each of these general objections, Spring Oaks hereby responds herein:

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET I)

1.  Produce all documents reflecting any sale, assignment, transfer, or conveyance of Plaintiff's Account from First Electronic Bank to any Transferor, Transferee, Assignor, or Assignee, including but not limited to purchase and sale agreements, assignments, bills of sale, schedules of accounts, attachments, amendments, and signature pages, regardless of the identity of the receiving entity.

**RESPONSE:  Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants object that the Request seeks information that may contain confidential personal information for unrelated non-party consumers. Defendants further object the Request seeks irrelevant, confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.  Defendants also object that this Request seeks documents and information that are not in Defendants' possession and which are equally accessible to Plaintiff. Subject to the stated objections, see SOC_HASSAN 000001-000584.**

2.  Produce all documents evidencing any payment, consideration, or compensation exchanged in connection with any alleged sale, assignment, or transfer of Plaintiff's Account following origination by First Electronic Bank, including wire confirmations, ACH transfers, settlement statements, general ledger entries, or accounting records, regardless of the entities involved.

**RESPONSE:  Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any**

**party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks irrelevant, confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

3. Produce all schedules of accounts, data tapes, spreadsheets, or electronic files identifying Plaintiff's Account in connection with any alleged transfer of Plaintiff's Account following origination, regardless of the entities involved.

**RESPONSE: Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.**

4. Produce all purchase and sale agreements, assignments, bills of sale, master agreements, forward flow agreements, amendments, side letters, schedules, exhibits, and attachments that purport to govern or effectuate any sale, assignment, or transfer of Plaintiff's Account to Spring Oaks Capital, LLC, regardless of date or counterparty.

**RESPONSE: Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.**

5. Produce all documents evidencing any payment, consideration, or compensation made by Spring Oaks Capital, LLC in connection with any acquisition of Plaintiff's Account, including wires, ACH transfers, settlement statements, or accounting records, regardless of the identity of the transferor.

**RESPONSE: Objection. This request is duplicative of Request No. 2. Subject to the stated objection, see Defendants' Response to Request No. 2, supra.**

6. Produce all bills of sale, assignment documents, transfer instruments, schedules of accounts, exhibits, attachments, and related documents that purport to transfer, assign, or convey Plaintiff's Account to Spring Oaks Capital, LLC, regardless of date or originating entity.

**RESPONSE: Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.**

7. Produce every schedule of accounts or data file identifying Plaintiff's Account at each alleged stage of transfer following origination by First Electronic Bank, including all intermediate and subsequent transfers, whether or not such entities were previously disclosed.

**RESPONSE: Objection. This request is duplicative of Request No. 1, and seeks information that may not be within Defendants' possession or control. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.**

8. Produce internal records, system logs, account notes, or metadata reflecting the date on which Spring Oaks Capital, LLC first received, boarded, or acquired Plaintiff's Account.

**RESPONSE: SOC_HASSAN 000001-000584.**

**ROSSMAN KIRK, PLLC**

Dated:  January 20, 2026

By: */s/ Benjamin J. Kirk*
*Pro Hac Vice*
Benjamin J. Kirk, 0393192
2626 E 82nd St., Suite 135
Bloomington, MN 55425
Telephone: 612-225-4176
benjamin.kirk@rossmankirk.com
*Attorneys for Plaintiffs*

4

# Defendants' RFP (SET 2) Responses

**This page intentionally left blank.**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EHAB HASSAN,<br>an individual,<br><br>   Plaintiff,<br><br>v.<br><br>SPRING OAKS CAPITAL, LLC and<br>SPRING OAKS CAPITAL SPV, LLC,<br><br>   Defendants. | Case No.: 1:25-cv-04850-NRM-CHK<br><br><br>**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET II)** |

Defendants, Spring Oaks Capital, LLC ("Spring Oaks LLC") and Spring Oaks Capital SPV, LLC ("Spring Oaks SPV") (together, "Defendants" or "Spring Oaks") provide the following objections and responses to Plaintiff's Requests for the Production of Documents (Set II).

## PRELIMINARY STATEMENT

1. These answers are based upon information presently known by Spring Oaks. It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions. Spring Oaks reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these answers as warranted thereby. These answers are made in a good faith effort to supply as much information and specification as presently known.

2. Each answer herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

3.      The absence of an objection that a request is irrelevant is not intended to be a waiver of that objection and Spring Oaks reserves the right to object on relevancy grounds at any state of these proceedings.

4.      To the extent any request or any part thereof is intended to elicit information protected from discovery by the attorney-client privilege or the attorney work product doctrine, Spring Oaks objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

5.      Referencing and expressly incorporating each of these general objections, Spring Oaks hereby responds herein:

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET II)

9.  Produce any power of attorney, agency agreement, delegation, or other authorization permitting any Seller, Assignor, or Transferor to execute or sign documents purporting to convey Plaintiff's Account following origination by First Electronic Bank, including the effective date, duration, and scope of such authority, and evidence that the authorization was in effect at the time any transfer document relating to Plaintiff's Account was executed.

**RESPONSE: Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object that this Request seeks documents and information that are not in Defendants' possession or control and which are equally accessible to Plaintiff. Subject to the stated objections, see Promissory Note, dated January 28, 2023 at SOC_HASSAN 000052.**

10. Produce all corporate resolutions, authority letters, internal delegations, or approvals authorizing any individual to execute any bill of sale, assignment, or transfer instrument relating to Plaintiff's Account on behalf of any Seller, Assignor, Purchaser, or Assignee, which were in effect at the time of execution and which identify the date of adoption and the individual(s) authorized to sign.

**RESPONSE: Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object that this Request seeks documents and information that are not in Defendants' possession or control and which are equally accessible to Plaintiff.**

11. Produce all documents evidencing any payment or consideration exchanged between Defendants in connection with any internal or affiliate transfer of Plaintiff's Account, including bank-generated records, transaction confirmations, or accounting entries sufficient to demonstrate actual payment.

**RESPONSE: Objection. This Request is duplicative of Request No. 2, Plaintiff's Request for Production of Documents (Set I). This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

12. Produce all agreements, assignments, schedules, exhibits, or instruments governing any transfer of Plaintiff's Account between Spring Oaks Capital, LLC and Spring Oaks Capital SPV, LLC, including all signature pages, effective dates, and schedules identifying Plaintiff's Account, and showing that such instruments were executed and in effect at the time of the alleged transfer.

**RESPONSE: Objection. This Request is duplicative of Request No. 2, Plaintiff's Request for Production of Documents (Set I). This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants. Subject to stated objections, see SOC_HASSAN 000192-000195.**

13. Produce all documents reflecting any failed, voided, rejected, reversed, disputed, or rescinded transfer of Plaintiff's Account at any time, including internal communications, system logs, exception reports, or audit records identifying the reason for failure and the date such failure occurred.

**RESPONSE: None.**

14. Produce all notices, letters, disclosures, or communications sent to Plaintiff informing him of any sale, assignment, or transfer of Plaintiff's Account, together with contemporaneous proof of transmission or delivery, including mailing records, tracking confirmations, system dispatch logs, or business records showing the date and method of delivery.

**RESPONSE:  See SOC_HASSAN 000001-000584.**

15. Produce all internal communications, including emails, memoranda, messages, notes, or correspondence, discussing, questioning, or analyzing the authority, validity, scope, or enforceability of any transfer of Plaintiff's Account, including communications created contemporaneously with or prior to any such transfer and any communications reflecting concerns, exceptions, or unresolved issues.

**RESPONSE: Objection. This Request seeks information protected by the attorney/client privilege and/or the work product doctrine. Subject to and without waiving said objection, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

16. Produce the complete loan origination file for Plaintiff's Account, including application data, underwriting records, purpose-of-loan fields, risk assessments, and business-use declarations, as maintained in the ordinary course of business and including all native records, system exports, and associated metadata sufficient to identify the date of creation, source system, and any subsequent modification.

**RESPONSE: Objection. This Request seeks information not in Defendants' possession or control and to which Plaintiff has equal access. This Request is better directed to the loan originator(s). Subject to and without waiving said objections, see SOC_HASSAN 000001-000584.**

17. Produce all documents, system fields, metadata, coding entries, or classification records showing how Plaintiff's Account was designated (business, commercial, consumer, personal, or otherwise) at any time, including records reflecting any change, override, reclassification, or recoding of loan purpose and the date such change occurred.

**RESPONSE: Objection. This Request is vague and ambiguous as to the meaning of "records reflecting any change, override, reclassification, or recoding of loan purpose and the date such change occurred." Subject to and without waiving said objections, to the extent relevant, see SOC_HASSAN 000001-000584.**

18. Produce all communications, including emails, memoranda, messages, notes, or correspondence, discussing, referencing, or questioning the purpose-of-loan classification for Plaintiff's Account, including communications created before, during, or after origination, servicing, transfer, furnishing, or dispute investigation, and including any communications reflecting uncertainty, disagreement, or review of loan purpose.

**RESPONSE: Objection. This Request seeks information protected by the attorney/client privilege and/or the work product doctrine. This Request is vague and ambiguous as to the meaning of "the purpose-of-loan classification for Plaintiff's Account." Subject to and without waiving said objections, none.**

19. Produce all servicing manuals, procedures, protocols, guidelines, or instructions governing how loan purpose is stored, transferred, preserved, reviewed, or honored during servicing, sale, transfer, or furnishing of accounts, including any versions in effect at the time Plaintiff's Account was serviced, transferred, or furnished.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants. This Request is vague and ambiguous as to the meaning of "loan**

4

**purpose." Subject to and without waiving said objections, none.  To the extent relevant, see SOC_HASSAN 000001-000584.**

20. Produce screenshots, exports, or reports from any servicing, underwriting, or portfolio system displaying loan-purpose or product-classification fields for Plaintiff's Account, including native system exports or reports sufficient to show the field name, field value, source system, and date the information was recorded or modified.

**RESPONSE:  Objection. This Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants. This Request is vague and ambiguous as to the meaning of "loan purpose." Subject to and without waiving said objections, to the extent relevant, see SOC_HASSAN 000001-000584.**

21. Produce all data dictionaries, schema definitions, field-mapping guides, conversion tables, or technical documentation explaining how loan-purpose and loan-type data is transferred, mapped, preserved, or transformed between systems, including documents identifying the source system, destination system, field names, field values, and any rules governing overwriting, defaulting, or reclassification of such data.

**RESPONSE:  Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.  This Request is vague and ambiguous as to the meaning of "loan-purpose and loan-type data." Subject to and without waiving said objections, none.**

22. Produce all communications sent to Plaintiff referencing loan classification, loan type, or consumer/business designation, together with contemporaneous proof of transmission or delivery, including mailing records, tracking confirmations, system dispatch logs, or business records showing the date and method of delivery.

**RESPONSE: This Request is vague and ambiguous as to the meaning of "loan classification, loan type, or consumer/business designation." Subject to and without waiving said objections, to the extent relevant, see Defendants' response to Request No. 14, supra.**

23. Produce all documents reflecting any review, verification, or analysis of Plaintiff's stated use of loan proceeds, including review checklists, underwriting notes, verification records, third-party confirmations, internal approvals or rejections, and records identifying the date such review occurred and the person or system performing it.

**RESPONSE:  Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm**

5

**to Defendants. This Request is vague and ambiguous as to the meaning of "stated use of loan proceeds." Subject to and without waiving said objections, none.**

24. Produce all training manuals, compliance guides, presentations, instructional materials, or onboarding documents explaining how personnel determine whether a loan is consumer or business in nature, including all versions in effect at the time Plaintiff's Account was originated, serviced, transferred, furnished, or disputed, and identifying the audience or personnel to whom such training applied.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

25. Produce all investigation records, notes, communications, workflows, and determinations relating to Plaintiff's disputes asserting business-purpose misclassification, including records identifying the date of each investigative step, the person or system performing it, the information reviewed, and the basis for any determination reached.

**RESPONSE: See SOC_HASSAN 000001-000584.**

26. Produce all documents reflecting whether loan-purpose data was lost, overwritten, ignored, replaced, defaulted, or otherwise altered during any transfer, servicing, or furnishing process, including system logs, audit trails, exception reports, change histories, or records identifying when such change occurred and the source or cause of the change.

**RESPONSE: Defendants object that the Request is vague and ambiguous as to the meaning of "loan-purpose data." Subject to and without waiving said objections, to the extent relevant, see SOC_HASSAN 000001-000584.**

27. Produce the complete Metro 2 data furnished for Plaintiff's Account to any consumer reporting agency, including all base segments and compliance-condition fields, together with any associated data dictionaries, field definitions, transmission logs, or validation records sufficient to identify the account type, portfolio code, ownership indicator, loan purpose, open date, date of first delinquency, and the dates on which such data was transmitted or updated.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Subject to and without waiving said objections, to the extent relevant, see SOC_HASSAN 000001-000584. Defendants will supplement production when available.**

28. Produce all ACDVs, e-OSCAR records, reinvestigation notes, dispute-verification documents, and communications exchanged with any consumer reporting agency relating to Plaintiff's Account, including records identifying the date each dispute was received, the information reviewed, the person or system performing the investigation, and the basis for any verification or determination made.

6

**RESPONSE: See SOC_HASSAN 000001-000584.**

29. Produce all policies, procedures, manuals, guidelines, or training materials governing Defendants' duties as furnishers under the Fair Credit Reporting Act, including accuracy standards, investigation requirements, dispute-handling procedures, and Metro 2 reporting protocols, including all versions in effect at the time Plaintiff's Account was furnished, disputed, or verified.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

30. Produce all training records, certifications, qualifications, onboarding materials, and continuing-education records for all personnel or systems materially involved in furnishing, verifying, or investigating Plaintiff's Account, including records identifying the training completed, the date of completion, and the role or function of each person or system with respect to Plaintiff's Account.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

31. Produce all workflow logs, task records, timestamps, system notes, and audit trails reflecting the handling of Plaintiff's disputes, including records showing when each task was initiated, completed, escalated, or closed, and whether any automated processes were used.

**RESPONSE: See Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

32. Produce all documents reflecting how the loan type, portfolio code, credit-transaction type, or consumer/business designation was selected, assigned, overridden, or approved for reporting Plaintiff's Account, including records identifying the decision-maker, the date of the decision, and the information relied upon.

**RESPONSE: Defendants object that the Request is vague and ambiguous as to the meaning of "loan type, portfolio code, credit-transaction type, or consumer/business designation." Subject to and without waiving said objections, to the extent relevant, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

33. Produce all metadata logs, validation records, system checks, transmission confirmations, and error or warning reports generated prior to or in connection with furnishing Plaintiff's Account to any consumer reporting agency, including records identifying the source system, date and time of transmission, validation results, and any rejected, corrected, or resubmitted data.

**RESPONSE: To the extent relevant, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

34. Produce all communications, including emails, memoranda, messages, notes, or correspondence, relating to the servicing, furnishing, verification, dispute handling, or reporting of Plaintiff's Account, including communications with any consumer reporting agency or internal communications discussing accuracy, corrections, or disputes.

**RESPONSE: See Defendants' document production, produced herewith, and specifically see SOC_HASSAN 000001-000584.**

35. Produce all documents reflecting dispute-resolution codes, verification outcomes, reinvestigation determinations, and reason codes used in connection with Plaintiff's Account, including records identifying the date each code was assigned, the person or system assigning it, and the basis for the determination.

**RESPONSE: See Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

36. Produce all audits, compliance reviews, escalation notes, quality-control assessments, supervisory reviews, or internal evaluations involving Plaintiff's Account, including records identifying the date of each review, the scope of the review, the findings or issues identified, and any corrective actions taken or recommended.

**RESPONSE: Objection. This Request seeks information protected by the attorney/client privilege and/or the work product doctrine. Subject to and without waiving said objection, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

37. Produce all agreements, service contracts, statements of work, instructions, or guidelines governing any third-party or vendor involvement in servicing, furnishing, verification, or dispute handling for Plaintiff's Account, including documents identifying the role performed, the responsibilities assigned, and the period during which such services were provided.

**RESPONSE: Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Subject to the stated objections, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

38. Produce all records of corrections, updates, deletions, rejects, resubmissions, or error returns relating to Plaintiff's Account, including records identifying the reason for the correction or rejection, the date it occurred, and the data fields affected.

**RESPONSE: To the extent relevant, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

39. Produce all documents reflecting how the open date, date of first delinquency, and any closure dates for Plaintiff's Account were determined, including records identifying the source data relied upon, the date each determination was made, any changes or corrections to such dates, and the person or system responsible for making or approving each determination.

**RESPONSE: See Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

40. Produce all documents identifying the individual(s), role(s), or system(s) responsible for the decision to furnish Plaintiff's Account as consumer credit, including records showing when the decision was made, the criteria or information relied upon, and whether the decision was reviewed, approved, or overridden.

**RESPONSE: To the extent relevant, see Defendants' document production, produced herewith, and specifically, see SOC_HASSAN 000001-000584.**

41. Produce all documents reflecting any failure to perform review, verification, or validation prior to furnishing Plaintiff's Account, including records showing the absence of required review steps, skipped workflows, default processing, or automated furnishing without human review.

**RESPONSE: None.**

42. Produce all notices, letters, disclosures, or communications sent to Plaintiff identifying any entity as the servicer, furnisher, or party responsible for handling disputes relating to Plaintiff's Account, together with contemporaneous proof of transmission or delivery, including mailing records, tracking confirmations, system dispatch logs, or business records showing the date, method, and sender of each communication.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

43. Produce all documents reflecting the first communication sent to Plaintiff following acquisition of Plaintiff's Account by any entity, including the content of the communication and contemporaneous proof of transmission or delivery showing the date and method by which it was sent.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

44. Produce all notices, disclosures, or communications advising Plaintiff of his right to dispute the accuracy, ownership, or classification of Plaintiff's Account, together with contemporaneous proof of transmission or delivery and records identifying when such disclosure was sent and by whom.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

45. Produce all documents sufficient to show the timing of each notice or communication sent to Plaintiff relative to the first date Plaintiff's Account was furnished to any consumer reporting

agency, including records identifying the date of first furnishing, the date each notice was generated, and the date each notice was transmitted or delivered.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

46. For each notice or communication produced relating to Plaintiff's Account, produce all contemporaneous and legally admissible evidence of mailing, transmission, or delivery, including certificates of mailing, USPS records, mailing logs, vendor transmission records, email headers, delivery confirmations, bounce-back records, and system-generated dispatch logs identifying the date, method, and sender.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

47. Produce all documents identifying the address, email address, or contact information used for each notice or communication sent to Plaintiff relating to Plaintiff's Account, including address-verification records, address-change logs, and records showing when and how the address was obtained or updated.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

48. Produce all documents reflecting any returned, undelivered, rejected, failed, or otherwise unsuccessful notices or communications relating to Plaintiff's Account, including returned mail records, system error logs, rejection notices, or vendor exception reports identifying the reason for failure and the date it occurred.

**RESPONSE: See Defendants' response to Request No. 14, supra.**

49. Produce all documents reflecting, describing, or evidencing the criteria, factors, rules, or policies used to classify Plaintiff's loan for consumer reporting purposes.

**RESPONSE: Objection. This Request is vague and ambiguous as to "classify Plaintiff's loan for consumer reporting purposes." Subject to and without waiving the stated objection, to the extent relevant, see Defendants' document production produced herewith and specifically see SOC_HASSAN 000001-000584.**

50. Produce all documents relied upon by Defendants, directly or indirectly, in determining the classification of Plaintiff's loan for consumer reporting purposes, including but not limited to internal guidelines, procedures, decision trees, automated rules, or third-party instructions.

**RESPONSE: Objection. This Request is vague and ambiguous as to "determining the classification of Plaintiff's loan for consumer reporting purposes." Subject to and without waiving the stated objection, see Defendants' document production produced herewith.**

51. Produce all documents reviewed, accessed, or relied upon by Defendants, directly or indirectly, prior to classifying or reporting Plaintiff's loan to any consumer reporting agency, including the loan agreement.

**RESPONSE: Objection. This Request is vague and ambiguous as to "classifying" Plaintiff's loan. Subject to and without waiving the stated objection, see Defendants' document production produced herewith, and specifically see SOC_HASSAN 000001-000584.**

52. Produce all documents that Defendants contend authorized them to classify or report Plaintiff's loan to consumer reporting agencies, including any servicing agreements, delegations of authority, or internal authorizations.

**RESPONSE: Objection. This Request is vague and ambiguous as to "classify" Plaintiff's loan. Subject to and without waiving the stated objection, see Defendants' document production produced herewith.**

53. Produce all policies, procedures, guidelines, or rules in effect on or before December 20, 2023, governing verification of loan purpose or account classification prior to reporting information to consumer reporting agencies.

**RESPONSE: Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.**

ROSSMAN KIRK, PLLC

By: */s/ Benjamin J. Kirk*

Dated: January 21, 2026

Benjamin J. Kirk, 0393192
2626 E 82nd St., Suite 135
Bloomington, MN 55425
Telephone: 612-225-4176
benjamin.kirk@rossmankirk.com
*Attorneys for Plaintiffs*

11

# Exhibit C

RFPs and Responses (**Annotated**)

**This page intentionally left blank.**

# Exhibit C

## RFPs and Responses (Annotated)

### General Introduction

This is an action arising under the Fair Credit Reporting Act ("FCRA"). Liability in this case turns on whether Defendants possessed **lawful authority** to furnish, report, and verify information concerning Plaintiff's account. Under the FCRA, such authority does not exist in the abstract; it must be derived from **legally admissible ownership** of the account or from **express authorization** granted by the lawful owner, such as a valid power of attorney or agency agreement.

Ownership is therefore a **threshold and dispositive issue**. A party that cannot establish ownership of an account—or lawful authority derived from ownership—cannot lawfully act as a furnisher, cannot verify disputed information, and cannot invoke the protections afforded to authorized furnishers under the FCRA.

Here, Defendants have affirmatively asserted ownership of Plaintiff's account and have claimed authority to furnish information to consumer reporting agencies as a **derivative of that asserted ownership**. Discovery is the procedural mechanism by which Defendants are afforded the opportunity to substantiate those assertions through admissible evidence.

To date, however, Defendants have **not produced documents establishing ownership**, have not produced documents conferring authority to act on behalf of a lawful owner, and have not produced documents demonstrating that Plaintiff's specific account was validly transferred or implemented as alleged. The discovery requests at issue are narrowly tailored to test these foundational assertions and to determine whether Defendants' claimed ownership and authority are supported by evidence or rest solely on unproven assumption.

The disputed Requests for Production set forth below are grouped and addressed under **four functional categories**. Each category corresponds to one or more **required components of proof** necessary to establish lawful ownership and derivative authority under the Fair Credit Reporting Act ("FCRA"). This organization is intended to present the discovery issues in a logical sequence so that the Court may readily evaluate **what evidence is required, why it is required, and whether such evidence has been produced**. Addressing the Requests by category clarifies the relationship between the discovery sought and the foundational elements Defendants must establish to substantiate their asserted ownership and authority. **For each numbered Request for Production, Defendants' response is also set forth, identifying the stated reasons or objections for withholding the requested documents.**

## I. Ownership, Chain of Title, and Authority (RFP Nos. 1, 4, 6, and 9)

### A. What This Category Is

This category concerns the **foundational** documents that establish who owns Plaintiff's account and who had legal authority to transfer it. It includes contracts, assignments, bills of sale, schedules, and any powers of attorney or agency agreements authorizing entities to execute transfer documents at each stage of the alleged chain of title.

### B. Why This Matters

Ownership and authority are **threshold issues**. A party **cannot** lawfully collect on, furnish, verify, or enforce an account unless it can show:

1. a **valid** chain of title from the originator to the current claimant, and

2. that each transfer was executed by an entity with **legal authority** to do so.

**Absent** these documents, Defendants' claims rest on **assumption rather than proof**.

### C. Legal Effect If These Documents Do Not Exist or Are Not Produced

If Defendants cannot produce documents establishing a complete chain of title and authority to execute transfers, then ownership is **unproven as a matter of law**. **Without** ownership and authority, Defendants **lack standing and lack lawful authority** to act with respect to Plaintiff's account, rendering their collection and reporting activity unsupported.


### PLAINTIFF'S RFP NO. 1

Produce all documents reflecting any sale, assignment, transfer, or conveyance of Plaintiff's Account from First Electronic Bank to any Transferor, Transferee, Assignor, or Assignee, including but not limited to purchase and sale agreements, assignments, bills of sale, schedules of accounts, attachments, amendments, and signature pages, regardless of the identity of the receiving entity.

### DEFENDANTS' RESPONSE:

Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants object that the Request seeks information that may contain confidential personal information for unrelated non-party consumers. Defendants further object the Request seeks irrelevant, confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants. Defendants also object that this Request seeks documents and information that are not in Defendants'

possession and which are equally accessible to Plaintiff. Subject to the stated objections, see SOC_HASSAN 000001-000584.

**RFP NO. 1 - Defendants' Objections — and Why They Fail**

**Objection 1: "Overly broad and unduly burdensome"**

Why it fails:

- The request is limited to Plaintiff's single account.

- It seeks documents Defendants must already possess if ownership exists.

- Producing ownership documents is not burdensome; it is routine.

A party cannot claim ownership while claiming it is burdensome to produce proof of ownership.

**Objection 2: "Not relevant or proportional"**

Why it fails:

- Ownership is central to every claim and defense.

- Courts routinely treat chain-of-title documents as relevant and proportional.

- Few discovery requests are more proportional or less burdensome than a request for documents establishing ownership.

This objection directly contradicts Defendants' own position that ownership exists.

**Objection 3: "Confidential personal information of non-parties"**

Why it fails:

- Plaintiff seeks documents relating to Plaintiff's account only.

- Any non-party information can be redacted.

- Confidentiality concerns do not justify wholesale nonproduction.

Courts reject using third-party privacy as a shield against producing relevant documents.

**Objection 4: "Confidential, proprietary, or trade-secret information"**

Why it fails:

- Plaintiff does not seek pricing formulas, valuations, or business strategies.

- Ownership documents can be produced with redactions or under a protective order.

- Trade-secret status does not excuse nonproduction of documents central to ownership.

A party cannot claim ownership while refusing to show the documents that establish it.

**Objection 5: "Not in Defendants' possession / equally accessible to Plaintiff"**

Why it fails:

- Assignment and sale agreements are not equally accessible to Plaintiff.

- Such documents are created and maintained by the transferring parties.

- If Defendants lack possession, custody, or control, they must say so clearly.

Defendants did not state that no such documents exist.

**Defendants' Actual Response**

"Subject to the stated objections, see SOC_HASSAN 000001–000584."

**Why This Is Inadequate**

- Defendants did not identify which documents in the 584-page production are responsive.

- Defendants did not identify any purchase agreement, assignment, or bill of sale.

- Defendants did not state that responsive documents do not exist.

A document dump without identification is not compliance.

**PLAINTIFF'S RFP NO. 4**

Produce all purchase and sale agreements, assignments, bills of sale, master agreements, forward flow agreements, amendments, side letters, schedules, exhibits, and attachments that purport to govern or effectuate any sale, assignment, or transfer of Plaintiff's Account to Spring Oaks Capital, LLC, regardless of date or counterparty.

**DEFENDANTS' RESPONSE:**

Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.

## RFP NO. 4 — Defendants' Objection and Why It Fails

### Conditional Duplication Clarification

Plaintiff acknowledges that this Request would be duplicative **if** Defendants had fully produced responsive documents that include the materials sought by this Request under the earlier Request they cite. If Defendants believed this Request was duplicative, they could have stated that responsive documents were previously produced and identified the production. Instead, Defendants asserted duplication without identifying any responsive documents, without cross-referencing specific Bates numbers, and without stating that no responsive documents exist. Such a bare assertion of duplication is not a valid discovery objection and does not excuse nonproduction.

### RFP No. 4 Is Not Duplicative of RFP No. 1

The duplication objection fails because RFP No. 4 seeks a **narrower and distinct subset of documents** than RFP No. 1.

- **RFP No. 1** seeks documents reflecting whether any sale or transfer of Plaintiff's account occurred from the originator.

- **RFP No. 4** seeks the agreements that specifically govern or effectuate a transfer **to Spring Oaks Capital, LLC**.

These Requests serve different evidentiary purposes:

- RFP No. 1 addresses whether a transfer occurred at all.

- RFP No. 4 addresses whether Spring Oaks Capital, LLC is the lawful recipient of that transfer and under what contractual authority.

A general cross-reference to documents purportedly produced under RFP No. 1 does not establish that:

- Spring Oaks Capital, LLC was a party to the relevant agreements, or

- Plaintiff's account was governed by those agreements.

Defendants did not:

- identify any agreement naming Spring Oaks Capital, LLC as transferee,

- identify any schedule or attachment linking Plaintiff's account to Spring Oaks Capital, LLC, or

- state that no such documents exist.

**Why RFP No. 4 Is Necessary**

Defendants have admitted that the alleged sale was not directly from the originator. That admission necessarily implies the existence of **intermediate transfers**. While RFP No. 1 was intended to capture the full chain, Defendants did not produce documents showing either:

- a complete chain of title, or

- any agreement that actually conveys Plaintiff's account to Spring Oaks Capital, LLC.

Because that evidentiary gap exists, RFP No. 4 is not duplicative — **it is corrective and essential**.

**Core Deficiency**

Defendants assert that Spring Oaks Capital, LLC owns Plaintiff's account, yet have not produced or identified any agreement that actually conveys Plaintiff's account to Spring Oaks Capital, LLC. Absent such agreements, Defendants' ownership claim remains unsupported.

**PLAINTIFF'S RFP NO. 6**

Produce all bills of sale, assignment documents, transfer instruments, schedules of accounts, exhibits, attachments, and related documents that purport to transfer, assign, or convey Plaintiff's Account to Spring Oaks Capital, LLC, regardless of date or originating entity.

**DEFENDANTS' RESPONSE:**
Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.

**RFP NO. 6 — Defendants' Objection and Why It Fails**

**Conditional Duplication Clarification**

Plaintiff acknowledges that this Request would be duplicative if Defendants had fully produced responsive documents that include the materials sought by this Request under the earlier Request they cite. If Defendants believed this Request was duplicative, they could have stated that responsive documents were previously produced and identified the production. Instead, Defendants asserted duplication without identifying any responsive documents, without cross-referencing specific Bates numbers, and without stating that no responsive documents exist. Such a bare assertion of duplication is not a valid discovery objection and does not excuse nonproduction.

**RFP No. 6 Is Not Duplicative of RFP No. 1**

RFP No. 6 seeks **the specific instruments that purport to convey Plaintiff's account to Spring Oaks Capital, LLC**, as distinct from general chain-of-title documents.

Defendants did not:

- produce documents establishing a complete chain of title under RFP No. 1,

- identify any bill of sale, assignment, or transfer instrument conveying Plaintiff's account to Spring Oaks Capital, LLC, or

- state that no such documents exist.

Because Defendants have not identified any document that actually conveys Plaintiff's account to Spring Oaks Capital, LLC, RFP No. 6 remains necessary to:

- isolate Spring Oaks' claimed ownership, and

- require Defendants to identify the specific transfer instruments on which that claim rests.

A cross-reference to RFP No. 1 does not satisfy this Request.

**Core Deficiency**

Defendants assert that Spring Oaks Capital, LLC owns Plaintiff's account, yet have not produced or identified any document that purports to transfer Plaintiff's account to Spring Oaks Capital, LLC. Absent such a document, Defendants' ownership claim remains unsupported.


**PLAINTIFF'S RFP NO. 9**

Produce any power of attorney, agency agreement, delegation, or other authorization permitting any Seller, Assignor, or Transferor to execute or sign documents purporting to convey Plaintiff's Account following origination by First Electronic Bank, including the effective date, duration, and scope of such authority, and evidence that the authorization was in effect at the time any transfer document relating to Plaintiff's Account was executed.

**DEFENDANTS' RESPONSE:**
Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object that this Request seeks documents and information that are not in Defendants' possession or control and which are equally accessible to Plaintiff. Subject to the stated objections, see Promissory Note, dated January 28, 2023 at SOC_HASSAN 000052.

**RFP NO. 9 — Defendants' Objections and Why They Fail**

**What Defendants Must Possess If Their Ownership Claim Is True**

If Defendants lawfully acquired Plaintiff's account through one or more assignments, then any individual or entity that executed transfer documents on behalf of a seller or assignor must have acted pursuant to valid authority. Accordingly, Defendants must possess documents establishing:

- a power of attorney, agency agreement, delegation, or other authorization;

- identifying who granted authority and who received it;

- stating the effective date, duration, and scope of that authority; and

- showing that such authority was in effect at the time any transfer document relating to Plaintiff's account was executed.

There is no alternative form of proof that can substitute for documentation establishing authority to execute an assignment.

**Objection 1: "Overly Broad and Unduly Burdensome"**

This objection fails.

- The Request seeks **one narrow category of documents**: authorizations to execute transfer instruments.

- It is expressly limited to **Plaintiff's account**.

- It does not seek communications, internal deliberations, or third-party data.

- If Defendants' narrative is accurate, these documents must already exist and be readily identifiable.

Producing documents that confer authority to execute assignments is neither burdensome nor expansive; it is a **routine and foundational requirement** of any lawful transfer. A party cannot assert ownership while claiming it is burdensome to produce proof that the transfer was executed by an authorized signatory.

**Objection 2: "Not Relevant or Proportional"**

This objection fails.

Authority to execute a transfer instrument is a **threshold issue**. An assignment executed by a person or entity lacking authority is legally ineffective. Without proof of authority, Defendants cannot establish:

- a valid assignment,

- lawful ownership,

- standing, or

- authority to collect, furnish, or verify information under the FCRA.

Few discovery requests are more proportional than one seeking documents that determine whether the alleged transfer was legally valid at all.


**Objection 3: "Not in Defendants' Possession or Control / Equally Accessible to Plaintiff"**

This objection fails.

- Powers of attorney and agency agreements authorizing execution of transfer documents are created, maintained, and relied upon by the transferring and receiving entities.

- Plaintiff, as a non-party to the alleged transfers, has **no independent access** to such documents.

- If Defendants contend that no such authorization exists, they were required to state that plainly.

Defendants did not state that responsive documents do not exist.


**Defendants' Production Does Not Respond to the Request**

Defendants' reference to a promissory note does not address this Request. The promissory note is part of the **loan agreement between Plaintiff and the original lender, First Electronic Bank**, and Defendants are **not parties** to that agreement. A promissory note does not confer authority to execute assignments, does not identify any agent or signatory authorized to transfer the account, and does not establish that any transfer document relating to Plaintiff's account was executed by a person with legal authority to do so.

Accordingly, Defendants' production of the promissory note does not respond to this Request and does not supply the missing proof of authority.


**Legal Significance of Non-Production**

If Defendants cannot produce documents establishing authority to execute the alleged transfer instruments:

- the signer of those instruments lacked authority,

- the purported assignment is legally defective, and

- Defendants' ownership claim fails as a matter of law.

There is no substitute evidence for proof of authority.

## II. Consideration / Proof of Payment (RFP Nos. 2, 5, and 11)

### A. What This Category Is

This category concerns documents showing whether money or other consideration actually changed hands in connection with any alleged sale, assignment, or transfer of Plaintiff's account, including external sales and internal or affiliate transfers.

### B. Why This Matters

A sale or assignment without consideration is not a sale. Proof of payment is the objective evidence that distinguishes a valid transfer of ownership from a paper or bookkeeping transfer. If Defendants assert ownership, they must be able to show that the account was acquired for value.

### C. Legal Effect If These Documents Do Not Exist or Are Not Produced

If Defendants cannot produce evidence of consideration, then no valid sale or assignment occurred. In that circumstance, Defendants cannot establish ownership of Plaintiff's account, and any claimed authority derived from such a transfer necessarily fails.

### PLAINTIFF'S RFP NO. 2

Produce all documents evidencing any payment, consideration, or compensation exchanged in connection with any alleged sale, assignment, or transfer of Plaintiff's Account following origination by First Electronic Bank, including wire confirmations, ACH transfers, settlement statements, general ledger entries, or accounting records, regardless of the entities involved.

### DEFENDANTS' RESPONSE:

Objection. This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks irrelevant, confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.

**RFP NO. 2 — Defendants' Objections and Why They Fail**

**Objection 1: "Overly broad and unduly burdensome"**

Why it fails:

- The Request is narrowly limited to Plaintiff's single account.

- It seeks routine accounting records (wire confirmations, ACH records, settlement statements, ledger entries) that necessarily exist if a sale or assignment occurred.

- Producing proof of payment is not burdensome where Defendants assert ownership derived from a transfer.

A party cannot simultaneously claim ownership of an asset and claim it is unduly burdensome to produce evidence that it paid for that asset.

Courts routinely reject "burdensome" objections where the request targets documents essential to a party's claimed rights.

**Objection 2: "Not relevant or not proportional"**

Why it fails:

- Consideration is an essential element of any valid sale or assignment.

- Defendants' authority to collect, furnish, or defend this action depends on ownership.

- Discovery does not get more relevant or proportional than proof that a transfer actually occurred.

Defendants' relevance objection directly contradicts their own position that the account was sold or assigned. If no consideration was exchanged, no transfer occurred as a matter of law.

**Objection 3: "Confidential, proprietary, or trade-secret information"**

Why it fails:

- Plaintiff does not seek:

    o pricing models,

    o portfolio-level valuation methods, or

    o internal business strategy.

- Plaintiff seeks only proof that consideration was exchanged, not the economic rationale or formula.
- Any sensitive figures may be redacted, while still showing that payment occurred.

Trade-secret protections do not excuse nonproduction of documents necessary to establish ownership or standing.

Protective orders and redactions — not blanket objections — are the proper mechanism.

**What Defendants Did *Not* Do (Critical Rule Violations)**

Defendants did not:

- produce any wire confirmation, ACH record, ledger entry, or settlement statement;
- state that responsive documents were previously produced; or
- state that no such documents exist.

Instead, Defendants relied solely on boilerplate objections.

That is not a compliant response under Rule 34(b)(2)(B)–(C), which requires a party to either produce documents or clearly state that none exist.

**Where Defendants claim ownership based on an alleged transfer, the absence of any evidence of consideration raises a threshold question as to whether any sale or assignment occurred.**

**PLAINTIFF'S RFP NO. 5**

Produce all documents evidencing any payment, consideration, or compensation made by Spring Oaks Capital, LLC in connection with any acquisition of Plaintiff's Account, including wires, ACH transfers, settlement statements, or accounting records, regardless of the identity of the transferor.

**DEFENDANTS' RESPONSE:**

Objection. This request is duplicative of Request No. 2. Subject to the stated objection, see Defendants' Response to Request No. 2, supra.

**RFP NO. 5 — Defendants' Objections and Why They Fail**

**Conditional Duplication Clarification**

Plaintiff acknowledges that this Request would be duplicative if Defendants had fully produced responsive documents that include the materials sought by this Request under the earlier Request they cite. If Defendants believed this Request was duplicative, they could have stated that responsive documents were previously produced and identified the production. Instead, Defendants asserted duplication without identifying any responsive documents, without cross-referencing specific Bates numbers, and without stating that no responsive documents exist. Such a bare assertion of duplication is not a valid discovery objection and does not excuse nonproduction.

**Duplication Objection Fails Under Rule 34**

Defendants object that this Request is duplicative of Request No. 2. That objection fails because duplication exists **only where responsive documents have already been produced**.

If Defendants believed this Request was duplicative, Rule 34 required them to:

- state that responsive documents were previously produced, and

- identify those documents with sufficient specificity (e.g., Bates ranges).

Defendants did **neither**. They did not identify any previously produced documents, did not cross-reference any Bates numbers, and did not state that no responsive documents exist. A bare assertion of duplication does not excuse nonproduction.

**RFP No. 5 Is Narrower and Distinct**

Even if Request No. 2 had been fully answered, RFP No. 5 is **not duplicative**.

- **RFP No. 2** seeks documents evidencing consideration for any alleged transfer of Plaintiff's account, regardless of the paying entity.

- **RFP No. 5** asks a narrower, specific question: whether **Spring Oaks Capital, LLC itself** paid consideration in connection with any acquisition of Plaintiff's account.

These Requests serve **different evidentiary purposes**. RFP No. 5 targets Spring Oaks' **claimed ownership**, not merely the existence of some transfer somewhere in the chain.

RFP No. 5 would become duplicative **only if** Defendants had already produced documents under RFP No. 2 showing that Spring Oaks Capital, LLC paid consideration for Plaintiff's specific account. Defendants did not do so.

**The Core Deficiency (Discovery-Safe)**

Defendants assert that Spring Oaks Capital, LLC owns Plaintiff's account, yet have produced no document showing that Spring Oaks paid consideration for it.

A cross-reference to RFP No. 2 does not answer the question posed by this Request: whether Spring Oaks Capital, LLC itself made any payment in connection with the alleged acquisition.

**Where ownership is asserted by Spring Oaks, documents evidencing payment by Spring Oaks are directly relevant and proportional. Defendants' response leaves that assertion unsupported by any disclosed evidence.**

**PLAINTIFF'S RFP NO. 11**

Produce all documents evidencing any payment or consideration exchanged between Defendants in connection with any internal or affiliate transfer of Plaintiff's Account, including bank-generated records, transaction confirmations, or accounting entries sufficient to demonstrate actual payment.

**DEFENDANTS' RESPONSE:**

Objection. This Request is duplicative of Request No. 2, Plaintiff's Request for Production of Documents (Set I). This Request is overly broad and unduly burdensome. Additionally, Defendants object that this Request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object the Request seeks confidential, proprietary, and trade-secret information, the disclosure of which would cause competitive harm to Defendants.

**RFP NO. 11 — Defendants' Objections and Why They Fail**

**Conditional Duplication Clarification**

Plaintiff acknowledges that this Request would be duplicative if Defendants had fully produced responsive documents under Request No. 2 that include the materials sought here. If Defendants believed this Request was duplicative, Rule 34 required them to state that responsive documents were previously produced and to identify that production with sufficient specificity.

Defendants did neither. They did not identify any previously produced documents, did not cross-reference any Bates numbers, and did not state that no responsive documents exist. A bare assertion of duplication does not excuse nonproduction.

RFP No. 11 would be duplicative only if Defendants had fully produced payment records for all alleged transfers under RFP No. 2, including internal or affiliate transfers. Defendants have not done so. Accordingly, RFP No. 11 remains necessary.

**The Core Deficiency**

If Defendants had fully responded to RFP No. 2, they would have stated one of the following:

1. Responsive documents were previously produced and identified; or

2. No responsive documents exist after a reasonable search.

Defendants did neither. Instead, they asserted confidentiality and trade-secret objections without producing documents or stating that none exist. That response does not comply with Rule 34.

**Why the Trade-Secret Objection Fails**

Plaintiff does not seek pricing terms, valuation methodologies, or internal business strategy. Plaintiff seeks only bank-generated or accounting records sufficient to demonstrate that consideration was exchanged in connection with any internal or affiliate transfer of Plaintiff's account.

Such proof may consist of wire confirmations, ACH records, settlement confirmations, or ledger entries showing that payment occurred. Any sensitive figures may be redacted. Trade-secret status does not excuse nonproduction of documents necessary to substantiate a claimed transfer.

**Why RFP No. 11 Remains Necessary**

Because Defendants:

- did not produce documents evidencing consideration under RFP No. 2,

- did not identify any prior production, and

- did not state that responsive documents do not exist,

RFP No. 11 is required to address the gap left by Defendants' incomplete response. This Request does not duplicate RFP No. 2; it seeks clarification necessitated by Defendants' failure to produce or identify responsive documents.

**Where Defendants assert ownership based on internal or affiliate transfers, documents evidencing consideration for those transfers are directly relevant and proportional to the needs of the case.**

### III. Account Identification / Inclusion and Implementation (RFP Nos. 3 and 7)

### A. What This Category Is

This category concerns documents that identify Plaintiff's specific account as part of any alleged transfer and show that the transfer was implemented, including schedules of accounts, data files, and notices to Plaintiff with proof of delivery.

### B. Why This Matters

General transfer agreements do not establish ownership unless the individual account at issue is specifically included. Schedules, data files, and notices are the records that link abstract agreements to real accounts and demonstrate continuity of ownership through intermediate transfers.

### C. Legal Effect If These Documents Do Not Exist or Are Not Produced

If Defendants cannot show that Plaintiff's account was actually identified and included in any transfer, then ownership cannot be established. Without account-level identification and implementation, Defendants' ownership claim remains unsupported regardless of any general agreements they reference**.**

### PLAINTIFF'S RFP NO. 3

Produce all schedules of accounts, data tapes, spreadsheets, or electronic files identifying Plaintiff's Account in connection with any alleged transfer of Plaintiff's Account following origination, regardless of the entities involved.

### DEFENDANTS' RESPONSE:

Objection. This request is duplicative of Request No. 1. Subject to the stated objection, see Defendants' Response to Request No. 1, supra.

### RFP NO. 3 — Defendants' Objections and Why They Fail

Defendants' duplication objection simply repeats the objection asserted to RFP No. 1 and does not address the substance of this Request.

- RFP No. 1 seeks transactional documents (e.g., purchase agreements, assignments, bills of sale).
- RFP No. 3 seeks account-level identification records (e.g., schedules of accounts, data tapes, spreadsheets, or electronic files).

These are **different categories** of documents and serve different evidentiary purposes. A transfer agreement alone does not identify which specific accounts were transferred; only schedules or data files do.

Defendants did not:

- identify any schedule, data tape, spreadsheet, or electronic file that includes Plaintiff's account, or
- state that no such records exist.

A cross-reference to RFP No. 1 does not satisfy this Request.


**The Core Deficiency**

Defendants claim ownership but have not produced—or identified—any schedule, data tape, spreadsheet, or electronic file showing that Plaintiff's account was included in any alleged transfer.

**Without account-identification records, Defendants' ownership assertion is unsupported by any disclosed evidence identifying Plaintiff's account as transferred.**


**PLAINTIFF'S RFP NO. 7**

Produce every schedule of accounts or data file identifying Plaintiff's Account at each alleged stage of transfer following origination by First Electronic Bank, including all intermediate and subsequent transfers, whether or not such entities were previously disclosed.

**DEFENDANTS' RESPONSE:**

Objection. This request is duplicative of Request No. 1, and seeks information that may not be within Defendants' possession or control. Subject to the stated objection, see Defendants' Response to Request No. 1, supra


**RFP NO. 7 — Defendants' Objections and Why They Fail**

**Conditional Duplication Clarification**

Plaintiff acknowledges that this Request would be duplicative if Defendants had fully produced responsive documents under Request No. 2 that include the materials sought here. If Defendants believed this Request was duplicative, Rule 34 required them to state that responsive documents were previously produced and to identify that production with sufficient specificity.

Defendants did neither. They did not identify any previously produced documents, did not cross-reference any Bates numbers, and did not state that no responsive documents exist. A bare assertion of duplication does not excuse nonproduction.

## 1. Duplication Objection

This Request would be duplicative only if RFP No. 1 had been fully answered.

- **RFP No. 1** seeks transfer agreements and other transactional documents.

- **RFP No. 7** seeks account-level schedules or data files identifying Plaintiff's Account at each stage of transfer.

These Requests serve different evidentiary purposes:

- Transactional agreements show that transfers were contemplated.

- Schedules and data files show whether Plaintiff's specific account was actually included.

Because Defendants did not fully produce account-identification records corresponding to each alleged transfer under RFP No. 1, RFP No. 7 remains necessary.

## 2. "Not in Defendants' Possession or Control" Objection

Defendants assert that the requested materials may not be within their possession or control. That objection is insufficient.

Where Defendants claim ownership based on a multi-step transfer, documents identifying Plaintiff's account at each stage of transfer are documents that Defendants either possess, control, or relied upon in asserting ownership.

At minimum, Rule 34 requires Defendants to:

- identify which schedules or data files exist,

- identify which entities possess or control them, or

- state clearly that no such records exist after a reasonable search.

Defendants did none of these. A speculative assertion that documents "may not" be within their possession or control does not satisfy discovery obligations.

**The Core Deficiency**

Defendants assert that Plaintiff's account was transferred through multiple stages but have not produced—or identified—any schedule, data tape, spreadsheet, or electronic file showing Plaintiff's account at each alleged stage of transfer.

**Without account-level identification records for each transfer stage, Defendants' chain-of-title assertion is unsupported by any disclosed evidence identifying Plaintiff's account as transferred.**

### IV. Notification to Plaintiff and Proof of Delivery (RFP No. 14)

#### A. What This Category Is

This category concerns documents showing whether Plaintiff was notified of any alleged sale, assignment, or transfer of his account and whether such notice was actually sent and delivered. It includes notices, letters, disclosures, and contemporaneous proof of transmission or delivery, such as mailing records, tracking confirmations, system dispatch logs, or other business records showing the date and method of delivery.

#### B. Why This Matters

Notice to the obligor is a critical part of implementing an alleged transfer. While ownership may be asserted between entities, notification is what makes a transfer operative and enforceable as to the consumer. Without notice, a purported assignee cannot reliably claim the right to collect, service, or furnish information regarding the account, and the consumer cannot know to whom obligations are allegedly owed.

Proof of delivery matters because unsupported assertions that notice was sent are insufficient. Routine business records ordinarily exist if notice was actually transmitted.

#### C. Legal Effect If These Documents Do Not Exist or Are Not Produced

If Defendants cannot produce documents showing that Plaintiff was notified of an alleged transfer, and cannot produce proof that such notice was sent and delivered, then there is no evidence that the transfer was ever implemented as to Plaintiff. In that circumstance, Defendants' claimed authority to act as owner or assignee is unsupported, and their collection and reporting activity lacks a lawful operational basis.

**PLAINTIFF'S RFP NO. 14**

**Produce all notices, letters, disclosures, or communications sent to Plaintiff informing him of any sale, assignment, or transfer of Plaintiff's Account, together with contemporaneous proof of transmission or delivery, including mailing records, tracking confirmations, system dispatch logs, or business records showing the date and method of delivery.**

**DEFENDANTS' RESPONSE:**

**See SOC_HASSAN 000001-000584.**

**RFP NO. 14 — Defendants' Response and Why It Is Deficient**

**A. This Request Seeks Two Distinct Categories of Documents**

RFP No. 14 seeks two separate and independent categories of documents:

1. Notices or communications informing Plaintiff of any alleged sale, assignment, or transfer of the account; and

2. Contemporaneous proof of transmission or delivery of those notices, such as:

   o   mailing records,

   o   tracking confirmations,

   o   system dispatch logs, or

   o   business records showing the date and method of delivery.

Producing one category does not satisfy the other. A notice, standing alone, does not demonstrate that it was ever sent or delivered.

**B. Defendants' Blanket Citation Does Not Comply with Rule 34**

Defendants' response—"See SOC_HASSAN 000001–000584"—fails to comply with Rule 34.

Defendants did not:

- identify which document(s) within the 584-page production constitute the alleged notice(s);

- identify any document showing proof of transmission or delivery;

- state that proof-of-delivery documents were previously produced; or

- state that no such proof exists after a reasonable search.

**A party may not satisfy an RFP by directing the requesting party to search through hundreds of pages without identifying the responsive documents. Courts routinely treat such undifferentiated document dumps as evasive, not compliant.**

## C. Proof of Delivery Is Not Optional or Redundant

Plaintiff's Request does not ask merely whether a notice was drafted. It asks whether notice was sent and whether that transmission can be verified through routine business records.

If proof of delivery existed, Defendants could have:

- identified a mailing record,

- cited a dispatch or system log, or

- stated that no such delivery proof exists.

They did none of these.

**Silence as to proof of delivery is not a response.**

## D. The Core Deficiency

Defendants have not identified—or produced—any document showing that Plaintiff was notified of an alleged sale, assignment, or transfer or any contemporaneous business record demonstrating that such notice was transmitted or delivered.

**Without identification of responsive documents or a statement that no such records exist, Defendants' response leaves unanswered whether notice was ever sent at all.**

## E. Why RFP No. 14 Remains Unanswered

Because Defendants:

- did not identify any notice document,

- did not identify any proof-of-delivery record,

- did not cross-reference specific Bates numbers, and

- did not state that responsive documents do not exist,

**RFP No. 14 remains unanswered. Defendants must either produce the responsive documents with specificity or state clearly that no such documents exist after a reasonable search.**

**This page intentionally left blank.**